FREEMAN-DARLING, INC v ANDRIES-STOREN-REYNAERT
MULTI GROUP, INC

Docket No. 78914. Submitted October 8, 1985, at Lansing.—Decided
November 19, 1985. Leave to appeal applied for.

Plaintiff, Freeman-Darling, Inc., brought an action against An-
dries-Storen-Reyhaert Multi Group, Inc., (ASR) and others in
the Washtenaw Circuit Court. Against ASR, Freeman alleged a
negligent interference with a contractual relationship Freeman
had with the State of Michigan. Freeman and ASR each had a
contract with the state. Performance of Freeman's contract was
dependent upon completion of the ASR contract. Freeman
alleged that ASR negligently delayed in performing its contract
and that Freeman was injured by that delay. The court, Ross
W. Campbell, Jr., J., granted partial summary judgment of
dismissal for ASR. Freeman appealed. *Held:*

The law in Michigan recognizes an action for negligent
interference with a contractual relationship based on a defen-
dant's failure to perform a contract with a third party where
the duty breached is imposed by the common law and not only
by the contract. The common law does not impose a duty on
contractors to perform without delay. Dismissal was proper.

Affirmed.

Negligence — Actions — Contracts — Negligent Interference
with Contractual Relationships.

The law in Michigan recognizes an action for negligent interfer-
ence with a contractual relationship based on a defendant's
failure to perform a contract with a third party where the duty
breached is imposed by the common law and not only by the
contract.

*Federlein & Grylls, P.C.* (by *Walter J. Federlein),*
for plaintiff.

References
Am Jur 2d, Interference §§ 52 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Interfer-
ence with Contract (supp).

*Honigman, Miller, Schwartz & Cohn* (by *Ronald S. Longhofer* and *David B. Jaffe),* for defendant.

Before: J. H. Gillis, P.J., and Cynar and R. L. Evans,* JJ.

Per Curiam. The appellant, Freeman-Darling, Inc. (hereinafter Freeman), initiated this cause of action seeking the recovery of damages from defendant-appellee Andries-Storen-Reynaert Multi Group, Inc. (hereinafter ASR), due to ASR's allegedly negligent failure to properly perform its contract with the State of Michigan. The trial court granted the appellee's motion for summary judgment pursuant to GCR 1963, 117.2(1). The resulting appeal is as of right.

The instant case arose out of the construction of the Ypsilanti Correctional Facility by the State of Michigan under a "multi-prime" contract arrangement. Under this plan, rather than hire a general contractor to coordinate the construction, the state awarded nine different contracts covering various phases of the facility's construction. Each of the nine contractors entered into separate contracts directly with the state.

Under the terms of its contract with the state, ASR was required to furnish special locking hardware for a security system to be built into the facility's administrative/medical building. The basis of Freeman's complaint against ASR was that, in selecting a subcontractor to perform the installation of the security locking system, ASR caused an unreasonable delay which affected Freeman's ability to proceed with and fulfill its own contractual obligations. In causing the work delay, it was alleged that ASR breached certain duties owed to

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

Freeman, to-wit: the duty "to perform its work in accordance with the expressed and implied terms and conditions of defendant ASR's contract with the Owner [the state]", and the duty "to refrain from taking actions, inactions, and making omissions, which a similarly situated construction contractor would know, and otherwise should know, would injure plaintiff and plaintiff's conduct and execution of its work pursuant to plaintiff's contract with the owner".

In essence, the theory upon which Freeman seeks to recover against ASR is the "negligent interference with a contractual relationship". We are therefore presented with an action in tort based upon the defendant's failure to perform its contract with a third party. The issue to be resolved, then, is whether Michigan recognizes such a cause of action.

Appellant Freeman begins its argument on appeal by citing two Michigan Supreme Court cases, *Clark v Dalman*, 379 Mich 251; 150 NW2d 755 (1967), and *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974), for the broad generalization that "Michigan recognizes an action in tort in favor of a non-contracting party which arises out of a contractual relationship". We believe the import of *Clark* and *Williams* was more accurately described in *Crews v General Motors Corp*, 400 Mich 208, 220-232; 253 NW2d 617 (1977) (opinion by WILLIAMS, J.), where Justice WILLIAMS indicated that *Clark* stood only for the proposition that "a duty underlying an action in tort *may* arise out of a contractual relationship". *Crews, supra*, p 225 (emphasis supplied). However, "a tort action will not lie when based *solely* on nonperformance of a contractual duty". *Crews, supra*, p 226 (emphasis in original).

The distinction between the above-stated propo-

sitions, although difficult to make, is significant. The concepts with which we are concerned were fully explored by the Supreme Court in *Hart v Ludwig,* 347 Mich 559;79 NW2d 895 (1956). The contract in *Hart* was for the care and maintenance of an orchard owned by plaintiffs which the defendant failed to complete. As in the present case, the plaintiffs alleged that defendant's omissions were contrary to the common law and constituted negligence. In analyzing the viability of an action in tort arising solely out of the breach of a contract, the *Hart* Court cited the following passage from a Massachusetts case, *Tuttle v Gilbert Manufacturing Co.* 145 Mass 169; 13 NE 465 (1887), which involved a suit by a lessee for injuries sustained when a barn floor, which the lessor had agreed to repair, collapsed:

" 'The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise, the failure to meet a note, or any other promise to pay money, would sustain an action in tort for negligence, and thus the promissor be made liable for all the consequential damages arising from such failure.

" 'As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract. In the case at bar, the utmost shown against the defendant is that there was unreasonable delay on its part in performing an executory contract. As we have seen, it is not liable by reason of the relation of lessor and lessee, but its liability, if any, must rest solely upon a breach of this contract.' " *Hart, supra,* p 563.

The Court went on to identify the important distinction as being one of misfeasance, which may support an action in either tort or contract, and nonfeasance of a contractual obligation, which

gives rise only to an action on the contract. The Court elaborated as follows:

"There are, it is recognized, cases in which an incident of nonfeasance occurs in the course of an undertaking assumed. Thus a surgeon fails to sterilize his instruments, an engineer fails to shut off steam, *Kelly v Metropolitan R Co,* [1895] 1 QB 944 (72 LT 551), a builder fails to fill a ditch in a public way, *Ellis v McNaughton,* 76 Mich 237 (15 Am St Rep 308). These are all, it is true, failures to act, each disastrous detail, in itself, a 'mere' nonfeasance. But the significant similarity relates not to the slippery distinction between action and nonaction but to the fundamental concept of 'duty'; in each a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself. Machinery has been set in motion and life or property is endangered. It avails not that the operator pleads that he simply failed to sound the whistle as he approached the crossing. The hand that would spare cannot be stayed with impunity on the theory that mere nonfeasance is involved. In such cases in the words of the *Tuttle* Case, *supra,* we have a 'breach of duty distinct from contract.' Or, as Prosser puts it (Handbook of the Law of Torts [1st ed], § 33, p. 205) 'if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.' " *Hart, supra,* pp 564-565.

Applying these concepts to the facts of *Clark v Dalman, supra,* reveals its inapplicability to the present situation. The defendant in *Clark* entered into a contract with the City of Otsego to repair, clean and paint a city water tank. Plaintiff was an employee of an engineering firm responsible for inspecting the defendant's work on the project. In carrying out its contract with the city, defendant coated the walls, floor and ladder inside the tank with an extremely slippery substance. When plaintiff went to inspect defendant's progress, he slipped

on the substance and fell to the bottom of the tank. Plaintiff sued, claiming that his injuries resulted from the defendant's failure to notify the engineering firm that the tank had been coated with a greasy substance. In reversing a directed verdict for the defendant, the Supreme Court addressed the crucial duty of care issue as follows:

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. * * *

"* * * Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. But it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort. This being so, the existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based." 379 Mich 251, 260-261.

Thus, while the contractual relationship brought the parties together and furnished the occasion of the tort, the defendant owned a general duty, imposed by the common law, "to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project * * *". 379 Mich 262. To paraphrase Prosser, a relation existed which gave rise to a legal duty without enforcing the contract promise itself, and thus it

was properly held that a tort action would lie. Prosser, Torts (1st ed), § 33, p 205; *Hart, supra,* p 565.

The same cannot be said of the case now before us. Freeman's only allegation against ASR was that ASR failed to perform the work in accordance with the terms and conditions of its contract with the state.[1] More specifically, ASR allegedly caused an unreasonable delay in connection with its designation of a subcontractor to perform the security locking system installation. As in *Hart,* ASR did not violate a duty imposed upon all, for the common law does not insist that contractors perform their work without unnecessary delay. Rather, the duty in question was voluntarily assumed by ASR when it entered into a contract with the state.[2] The contractual relationship was not merely the occasion of a duty arising by operation of law; rather, the entire existence of the duty depended upon the contract promise. Therefore, the breach of those contractual obligations could not provide the basis for an action sounding in tort. The motion for summary judgment based upon the failure to state a claim upon which relief could be granted was properly granted.

Affirmed.

---

[1] We note that the facts before us differ from those presented in *Hart* in that *Hart* concerned an action in tort based upon the breach of defendant's promise to the plaintiff, while here plaintiff Freeman has based its cause of action upon defendant ASR's breach of promise to a third party, *i.e.,* the state. This distinction does nothing to change the analysis contained herein, however. Since ASR had no legal duty to perform the work in question without enforcing the contract, the legal concepts set out in *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), require the identical conclusion, *i.e.,* that no action in tort will lie.

[2] The resolution of this case does not require that we address to whom the duty to perform the contracted-for work was owed, and thus we need not consider the effect of Freeman's third-party status in regards to the ASR-State of Michigan contract.