[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In this case, the plaintiff has brought suit against various parties for injuries he claims to have suffered when he slipped and fell on ice/snow in the parking lot of the defendant AP. He has also sued John Rhoades d/b/a Laurel City Landscaping. The defendant Rhoades at the time of the incident was under contract with the defendant AP to remove snow and ice from the parking lot. In the second count, the plaintiff claims his injuries were due to the negligence of the defendant Rhoades in that he or his agents permitted the parking area to be covered with ice/snow, failed to inspect the property to detect its dangerous condition, CT Page 12155 failed to take adequate steps to remove the ice or snow, failed to place adequate amounts of abrasive material on the parking area where the plaintiff fell, and failed to provide adequate warning of the dangerous conditions (¶ 6 of Revised Complaint).
The defendant Rhoades has now filed a motion for summary judgment claiming as a matter of law there is no liability on his part to the plaintiff because he owed no duty to the plaintiff. This motion really is addressed to the pleadings and their legal sufficiency. The plaintiff responds to the legal issue raised by the defendant Rhoades and says Rhoades did in fact owe a duty of reasonable care to the plaintiff and those in like situation because of Rhoades's "affirmative undertaking to perform work on the property where the plaintiff was injured." The standards to be applied on summary judgment are well known. Factual issues if dispositive cannot be resolved by the court. But neither party has filed documents, affidavits or depositions in this matter and the court will give the complaint that factual reading which is most favorable to the plaintiff's position.
To support its position, the defendant has referred to several cases that stand for the proposition that where a plaintiff falls and is injured on ice and snow, the person in possession and control of the premises cannot bring in for apportionment purposes the person or company it hired for snow and ice removal. Fullerton v. Wawa, Inc. 1998 WL 918014; Princev. Waldbaums, 1998 WL 811388; Fuda v. Judd Square Associates, 1997 WL 536286; Wood v. Chalet Suisse International, 1995 WL 317058;Lobovitz v. Nemeth, 1998 WL 175948; Brancero v. Thames RiverAssoc., 1998 WL 886552; Stockton v. Corporate Center WestAssociates, 1997 WL 80661.
It is true that several of these cases base their position on the view that since a snow removal contractor does not owe a duty to the injured plaintiff, the contractor cannot be brought in for apportionment purposes — after all, the defendant in possession and control of the premises has a non-delegable duty to keep the premises safe. The court agrees only with the result reached by these cases. It is in fact true that a party in possession and control of premises has a non-delegable duty to persons injured on those premises, "the possessor is ordinarily the party responsible for the reason that the person in possession is in a position of control and is best able to prevent harm."Connecticut Law of Torts, Wright, Fitzgerald, Ankerman, § 46, Page 108, cf Mark v. Clinch, 166 Conn. 295, 296 (1974). Thus, a CT Page 12156 landlord not in possession is usually not responsible for persons injured on property that has been leased. The defendant AP was obviously in possession of these premises at the time of the injury, and despite hiring of the snow removal contractor, it retained "control" which has been defined "as the power or authority to manage, superintend direct or oversee." Alderman v.Hanover Ins. Group, 169 Conn. 603, 605 (1975). Wright points out that where an employer has attempted to shift to a contractor a non-delegable duty the employer is still vicariously liable for the contractor's torts, therefore, it follows that "the possessor of land cannot delegate the duty owed to an invitee; nor can a landlord delegate the obligation of using reasonable care to keep common approaches safe." Section 67, p. 178. The reason that Section 52-572 (h), the apportionment statute, does not apply is that it would, in effect, overturn the substantive law and the policy sought to be enforced by it — that law, as noted, is simply that the possessor of land has a nondelegable duty to invitees to keep his or her land safe for invitees who are invited to enter the land for the owner's profit. If such people are injured, they should have the right, the law says, to sue the landowner and not be forced to seek recovery from perhaps financially untrustworthy or assetless independent contractors hired by the owner to fulfill his or her obligation to keep the land safe. The landowner can try to protect its interest vis-a-vis the contractor through indemnity agreements. Section52-572 (h) is a procedural mechanism to allocate responsibility, but it has to be viewed against the context of substantive law, it does not change that law. An injured plaintiff invitee ought not to have his or her recovery against a solvent landowner reduced by application of the statute since the substantive law of premises liability does not permit such a result. Since a non-delegable duty is involved, how does it make sense to talk about "the proportionate share of damages for which each party is liable," as subsection (d) of section 52-572 (h) does.
It is for this reason that the court believes snow removal contractors cannot be brought in for apportionment purposes. It is not necessary to reach this position to say that because the party in possession and control has a non-delegable duty that cannot be apportioned, no other party can be subject to suit or be found to have a "duty" to an injured person — they are two analytically distinct questions.
The only result of saying that the possessor of land has a duty to an injured party that cannot be apportioned and that a CT Page 12157 person or entity hired by the possessor of the land to remove snow also has such a duty would be that the injured party would have a claim against either.
That is, whether the party hired to perform snow removal has a duty to the injured party is a separate question of substantive law having nothing to do with the non-delegable duty that is owed by the possessor of the land to that injured party.
The question here then is what does the present substantive law say about the duty of an independent contractor to an injured party — or more exactly, a party injured in the manner set forth in the complaint.
The traditional rule in this area was set out in Bogoratt v.Pratt Whitney Aircraft Co., 114 Conn. 126 (1932) where the court said at page 142:
 "Where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though (the independent contractor) was negligent in carrying out the contract."
As noted in Minton v. Krish, 34 Conn. App. 361 (1994), three reasons were given for this rule: 1) the application of the doctrine of privity to negligence cases and of course there was no privity between the independent contractor and anyone injured by the work it performed; 2) the contractor was shielded from liability upon completion of the work because at that point control of the premises reverted to the owner of the premises or one in control of them; 3) the third "reason", which was more of a conclusory diktat, was that there was a presumption that the owner had carefully inspected the work and knew of its defects.
As Minton points out, Coburn v. Lenox Homes, Inc.,173 Conn. 567 (1977) without explicitly saying so, destroyed the underpinning of the traditional rule by rejecting the three reasons cited for its existence.
The court in Coburn said the privity requirement should only apply to contract actions and not claims based on tort. Id., 574. The court implicitly rejected the theory of control in Coburn. The contractor had completed his work two years before the CT Page 12158 plaintiff in that case bought the house in which he was injured and five years before the contractor was held liable for negligence. See Minton, 34 Conn. App. at 366. Minton v. Krish
explicitly rejected this second reason for the traditional rule.
The Coburn court and Minton rejected also the third reason for the traditional rule. As Minton said at 34 Conn. App. at page 366:
 "Coburn repudiated the theory of knowledge and acceptance that supported the rule . . . an owner would no longer be charged with knowledge and acceptance of a contractor's negligence."
But seemingly, Minton went beyond the explicit if not the implicit reasoning in Coburn.
Thus in Coburn, the court, in part, based its position rejecting the knowledge and acceptance rule on the fact that the owner who contracted the work out might not be in a position to discover "hidden defects," i.e. the contractor's negligence. But in referring to contractor liability for negligently built structures, Minton quoted from Prosser and went to a straight foreseeability test, see Minton, at 367. The Prosser quote is that "It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he (sic) fails to disclose dangerous conditions known to him (sic) but also when the work is negligently done." Torts (5th Ed.) § 104A, p. 723.
The Minton court, in effect, adopted and referred to Section 385 of Restatement (Second) Torts.
 § 385. Persons Creating Artificial Conditions on Land on Behalf of Possessor: Physical Harm Caused After Work has been Accepted
 One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others. CT Page 12159
And Minton concludes with a ringing endorsement of the application of a foreseeability test to this area . . . "the trial court's ruling in favor of the defendant on its motion for summary judgment must be reversed. The defendant's liability is not precluded by the fact that his work had been completed and accepted. Rather his liability hinges on foreseeability of injury to the plaintiff." Minton, 34 Conn. App., at 368.
There is an obvious tension in the Prosser formulation and the Restatement rule on the one hand, they both refer to situations where the dangerous condition is created by the independent contractor but justify this on foreseeability grounds. But if foreseeability is the test, what possible difference could it make whether the dangerous condition is created by the contractor or results from his or her failure to negligently remove a dangerous condition on the land which the contractor had agreed to remove? If foreseeability is viewed from the perspective of the contractor, as Prosser and the Restatement and Coburn and Minton now demand, what difference should there be between a situation where a snow removal contractor piles snow so as to severely limit visibility or plows the snow and ice in such a way to create, for example, dangerous compacted ridges and a situation where the contractor fails to put enough abrasive material down or remove enough snow because the plow blade was set too high? Should liability be imposed in the first situation, but not in the second? If so why? The silliness of the distinction is underlined in a case like Kragel v. Wal-MartStores, Inc., 537 N.W.2d 699 (Iowa, 1993), where the Appellate Court upheld the trial court's giving an instruction modeled on Section 385 of the Restatement against a snow removal contractor. There, the court said: "Here the evidence was that (the contractor) affirmatively altered the slushy snow. Testimony described the condition created as "jagged', "bumpy' and "slick'. The district court correctly noted that had the slushy snow been left in its natural condition, the instruction would not have applied. But (the contractor) affirmatively altered the slushy snow by his attempts at removal. In these circumstances there was sufficient evidence to submit" (the instruction). Id., 707. Frankly, this court cannot fathom or understand these distinctions. It should, however, be noted that the law in this area is still in a state of flux. Prosser and the Restatement really reflect the application of the more liberal rules applied against manufacturers releasing products into the market to contractors erecting structures (analogized to "products") or, in CT Page 12160 fact, creating any "artificial condition" on the land. But, if foreseeability is the chosen vehicle to make that application, how can its ambit not apply to contractors not hired to create a condition but relied on the owner to correct a dangerous condition especially where by understanding, past dealings and/or formal agreement the manner in which the work was to be performed has been set out and agreed to by the parties. On the other hand, how can the contractor complain about the rigors of applying the foreseeability test to snow removal contractors — its failure to do the job with reasonable care presents obvious dangers and these snow removal agreements, which contractors profit from, would be likely to induce landowners to not retain the necessary equipment and employees to correct a job the contractor has failed to perform or has performed inadequately increasing the possibility of harm to the public.
The court has reviewed the first Appendix to the Restatement as it applies to Section 385, this volume collects cases to December, 1963. The court has examined the other Appendix volumes which discuss cases from 1964 through June, 1998. Apart fromKragel v. Wal-Mart, supra, only two possibly relevant cases were discovered. In Masciangelo v. Dolente, 295 A.2d 98 (Pa. 1972), an injured worker was allowed to sue a contractor hired by the landowner to remove all trees and stumps to predesignated areas. The plaintiff was injured when his bulldozer ran into a stump that had not been removed; the stump sprang up an hit him. Id., 99. In Whorton v. T.A. Louings Co., 344 F.2d 739 (CA4, 1965), a shipowner whose vessel sank when it struck an underwater beam sued the contractor hired to build a new bridge and remove the underwater structure including the beam from the old bridge. In both cases it is hard to see how these particular contractors had "created" the dangerous condition — they just failed to remove them. Both of the cases have the advantage of being old enough so that the implication of the doctrine set forth in Section 385 had not yet ossified.
In any event, in light of the foregoing discussion, the court will not grant the motion for summary judgment.
Corradino, J.