DERBABIAN v S & C SNOWPLOWING, INC

Docket No. 216024. Submitted February 14, 2001, at Detroit. Decided February 12, 2002, at 9:00 A.M.

Robyn and John Derbabian brought an action in the Macomb Circuit Court against S & C Snowplowing, Inc., and Mariner's Pointe Associates Limited Partnership, alleging negligence by S & C with respect to Robyn Derbabian's injury and John Derbabian's loss of consortium stemming from Robyn Derbabian's slip and fall on a patch of ice in the parking lot of a shopping center owned by Mariner's Pointe. At the time she fell, Robyn had parked her automobile and was walking toward a Kroger store in the shopping center to do some shopping. S & C was under contract to Mariner's Pointe to provide snow removal services for the parking lot and to apply salt at S & C's discretion. S & C had last removed snow on the parking lot eight days before the slip and fall and last salted the parking lot four days before the slip and fall. It had not snowed between the date of the last snow removal and the date of the slip and fall, although it had rained the day before the slip and fall and temperatures had fallen below freezing after the rain. The court, Mary A. Chrzanowski, J., denied S & C's motions for summary disposition and a directed verdict, and a jury returned a verdict and award of damages in favor of the plaintiffs and against S & C. The court entered a judgment consistent with the verdict. S & C appealed.

The Court of Appeals *held*:

1. S & C is not liable to the plaintiffs under a premises liability theory because it did not have possession or control of the parking lot at the time of the slip and fall. In the context of this case, "possession" means the right under which one may exercise control over something to the exclusion of all others. Here, there is no indication that S & C ever controlled the parking lot to the exclusion of all others. Indeed, S & C was specifically hired to plow and salt the parking lot so that others could have access to it. In the context of this case, "control" means the exercise of restraint or discretion over something; dominate, regulate, or command; and the power to manage, direct, or oversee. Here, there is no evidence that the contract between Mariner's Pointe and S & C allowed S & C to exercise discretion over, dominate, regulate, or command in relation to

the parking lot. Instead, the contract merely indicated that S & C would plow the parking lot when plowing was needed and that S & C would salt the parking lot when S & C determined salting was necessary.

2. Premises liability is conditioned upon the presence of both possession and control over the land because the person or entity having both is normally best able to prevent harm to others. Here, S & C was not the entity that was in the best position to prevent injury to Robyn Derbabian. Instead, the record indicates that employees of Kroger (a business tenant of Mariner's Pointe and an invitor of Robyn Derbabian) were in the best position to prevent harm to her.

3. Assuming that S & C had possession and control of the parking lot at the time of the slip and fall, S & C would be liable only if the condition of the parking lot was caused by S & C's active negligence or the condition had existed a sufficient length of time that S & C should have had knowledge of it. The evidence in this case failed to show that S & C had actual or constructive notice of the icy condition of the parking lot or that S & C negligently failed to salt the parking lot.

4. A tort action will not lie when based solely on the nonperformance of a contractual duty. The plaintiffs do not have an action in tort against S & C that is independent of S & C's arguable breach of its contract with Mariner's Pointe in failing to inspect and salt the parking lot inasmuch as S & C did not have a common-law duty to plow, inspect, or salt the parking lot on the day of the slip and fall.

Reversed and remanded for entry of an order granting summary disposition to S & C.

WHITE, P.J., dissenting, stated that the plaintiffs adequately established S & C's common-law duty of care arising from the contract between S & C and Mariner's Pointe in light of case law holding that those foreseeably injured by the negligent performance of a contractual undertaking are owed a duty of care; that S & C had the requisite possession and control of the parking lot for the imposition of a duty of care on S & C in light of evidence that S & C had the power or authority to manage, direct, or oversee the parking lot for purposes of snow removal and salting; and that S & C should have known from the weather conditions that the parking lot would be icy and yet failed to take reasonable measures.

1. NEGLIGENCE — PREMISES LIABILITY — POSSESSION — CONTROL.

Possession and control of premises are required for imposition of premises liability; possession is the right under which the possessor exercises control over the premises to the exclusion of all

others; control is the power to manage, direct, or oversee the premises.

2. NEGLIGENCE — PREMISES LIABILITY — DANGEROUS CONDITIONS.

A possessor of premises is liable for injury to an invitee caused by a dangerous condition on the premises if the condition was caused by the active negligence of the possessor or the condition had existed a sufficient length of time that the possessor should have had knowledge of it.

3. TORTS — BREACH OF CONTRACT.

An action in tort will not arise from a breach of contract unless it would arise independently of the existence of the contract.

*Law Offices of Samuel I. Bernstein* (by *Leonard E. Miller*), for the plaintiffs.

*Kallas & Henk, P.C.* (by *Scott L. Feuer*), for the defendant.

Before: WHITE, P.J., and WILDER and ZAHRA, JJ.

WILDER, J. In this premises liability action, defendant S & C Snowplowing, Inc., appeals as of right trial court orders denying defendant summary disposition and entering judgment in favor of plaintiffs Robyn and John Derbabian.[1] We reverse the judgment in favor of plaintiff and remand for entry of judgment in favor of defendant pursuant to MCR 2.116(C)(10).

I. FACTS AND PROCEEDINGS

A. THE CONTRACT

During the winter of 1995-96, defendant and Mariner's Pointe Associates Limited Partnership (Mariner's Pointe) entered into a contract for the removal of

---

[1] Because John Derbabian's loss of consortium claim is derivative of Robyn Derbabian's negligence action, "plaintiff" will refer to Robyn Derbabian.

snow and ice from the Mariner's Pointe Shopping
Center, located in Harrison Township. The contract
specified that in exchange for a flat fee, defendant
would provide snow removal services in the "parking
areas, entrances, receiving areas, etc.," and on "city
and tenant (sic) sidewalks." The contract also speci-
fied that defendant would salt the parking areas for
an extra charge of $90 per ton of salt applied, and
that the salt was to be applied "by Contractor discre-
tion."[2] The contract required that all work would "be
completed in a professional manner according to
standard practices."

### B. PLAINTIFF'S INJURY AND LAWSUIT

On the morning of February 22, 1996, plaintiff
arrived at Mariner's Pointe Shopping Center, got out
of her vehicle, and began walking toward the Kroger
store in the shopping center when she slipped and fell
on ice, injuring her left ankle. Discovery evidence
revealed that there was no precipitation falling at the
time plaintiff fell, but that it had rained for a few
hours the day before plaintiff fell. Discovery also
established that defendant last plowed the parking lot
on February 14, 1996, after a 4½-inch snowfall and
that, following that snowfall, defendant applied at
least eight tons of salt between February 14, 1996,
and February 18, 1996. In addition, the discovery pro-
cess failed to produce any evidence that defendant
negligently plowed or salted the parking lot after the
February 14, 1996, snowfall or that there was addi-
tional snowfall between February 14, 1996, and Feb-

---

[2] Depending on the type of salt used, the charge for salting the side-
walks was either $12 or $27 an eighty-pound bag.

ruary 22, 1996. Discovery also established that no one—including plaintiff—had observed the ice patch before the fall and that the ice covered an area approximately the size of two parking spaces. The record also established that there was no snow present on the surface of the parking lot at the time plaintiff fell.

Plaintiff filed suit against Mariner's Pointe, the owner and operator of the shopping center, alleging, among other things, negligent maintenance of the parking lot and negligent failure to inspect the premises for dangerous conditions. Mariner's Pointe filed a third-party complaint for indemnification or contribution against defendant. Plaintiff then filed an amended complaint that added defendant as a primary defendant. The amended complaint alleged that defendant, along with Mariner's Pointe, "exercis[ed] control over the . . . parking lots" of Mariner's Pointe at the time of plaintiff's fall and that, on the basis of this control, defendant owed plaintiff a duty to exercise reasonable care to diminish the danger associated with accumulated ice and snow within a reasonable time after its accumulation and to ensure that the parking lot was maintained in a safe condition. Plaintiff also alleged that defendant's negligence in failing to inspect the parking lot for dangerous conditions, and in failing to rectify dangerous conditions that were present, amounted to a breach of defendant's duty to exercise reasonable care.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10), contending that it was not in possession and control of the parking lot at the time of plaintiff's fall and therefore could not be held liable for plaintiff's injuries under a premises liability

theory. Defendant also argued that plaintiff failed to establish a genuine issue of material fact regarding whether defendant created or had knowledge of the ice patch that caused plaintiff's fall. Mariner's Pointe concurred with defendant's argument that neither defendant nor itself had notice of the icy condition.

In response, plaintiff argued that because defendant failed to make reasonable inspections of the parking lot, and therefore could not alleviate the icy condition, defendant failed to exercise reasonable care in the performance of its contractual duties and was therefore negligent. Plaintiff also argued that because defendant entered into a contract with Mariner's Pointe to remove snow and ice and to ensure that the premises were safe, defendant assumed the duty of the premises owner, i.e., Mariner's Pointe, with regard to inspecting the premises for dangerous conditions, and further argued that there was a genuine dispute regarding whether defendant had knowledge of the icy condition. Following oral argument, the trial court concluded that factual issues existed that had to be decided by the jury, and therefore denied defendant's motion in its entirety.

Before trial, plaintiff settled with Mariner's Pointe, and Mariner's Pointe and defendant stipulated to dismiss the third-party action without prejudice. The case then proceeded to trial against defendant. At the close of plaintiff's case, defendant moved for a directed verdict, which the trial court denied. Defendant then rested without calling any additional witnesses.

Following the closing arguments, the jury found defendant ninety percent negligent, plaintiff ten percent negligent, and awarded plaintiff $45,000 for past

and present damages. The jury also awarded plaintiff $1,000 annually, from 1999 to 2030, for future damages.[3] On the basis of this verdict, the trial court entered a judgment awarding plaintiff and John Derbabian $33,445. This figure was arrived at after reducing the judgment by ten percent to account for plaintiff's comparative negligence and reducing the award to present value and by including taxable costs, mediation sanctions, and interest.

## II. STANDARD OF REVIEW

This Court's review of a trial court's grant or denial of a summary disposition motion is de novo. *Dressel v Ameribank*, 247 Mich App 133, 136; 635 NW2d 328 (2001), citing *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), we consider "the pleadings, affidavits, depositions, admissions, and any other documentary evidence in a light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists that would preclude judgment for the moving party as a matter of law." *GC Timmis & Co v Guardian Alarm Co*, 247 Mich App 247, 252; 635 NW2d 370 (2000), citing *Unisys Corp v Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155 (1999).

Similarly, we review de novo a trial court's decision regarding a directed verdict. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2000); *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). In review-

---

[3] The jury also awarded John Derbabian $5,000 for his loss of society and consortium claim.

ing the trial court's decision, we view the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, granting that party every reasonable inference, and resolving any conflict in the evidence in that party's favor to decide whether a question of fact existed. *Thomas v McGinnis*, 239 Mich App 636, 643-644; 609 NW2d 222 (2000); see also *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998); *Morinelli, supra.* A directed verdict is appropriate only when no factual question exists on which reasonable jurors could differ. *Meagher, supra* at 708.

### III. ANALYSIS

Defendant first argues that because it did not have possession and control of the parking lot when plaintiff fell, it should not be held liable under a premises liability theory. We agree.

To be liable under a premises liability theory, plaintiff must show that defendant was a possessor of the parking lot at the time of plaintiff's injury. Our Supreme Court has defined a "possessor" of land as:

"(a) a person who is in occupation of the land with intent to control it or

"(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)." [*Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980), quoting 2 Restatement Torts, 2d, § 328 E, p 170.]

See also *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 569; 563 NW2d 241 (1997).

To determine whether defendant was a possessor of the parking lot, it is necessary to determine the meaning of the terms "possession" and "control" as used in the definition of "possessor." Neither of these words has previously been defined by Michigan case law; accordingly, relevant dictionary definitions may be consulted in order to determine the plain meaning of these terms. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998); *Michigan Millers Mutual Ins Co v Bronson Plating Co*, 445 Mich 558, 568; 519 NW2d 864 (1994); *Hoover Corners, Inc v Conklin*, 230 Mich App 567, 572; 584 NW2d 385 (1998).

Black's Law Dictionary (7th ed) defines "possession," in this context, as "[t]he right under which one may exercise control over something to the *exclusion of all others*" (emphasis added).[4] Here, there is no indication that defendant ever controlled the parking lot to the exclusion of all others. Indeed, it is apparent that defendant was specifically hired to plow and salt the parking lot so that others may have access to it. *Random House Webster's College Dictionary* (1995), p 297, defines "control" as "exercis[ing] restraint or direction over; dominate, regulate, or command." Similarly, Black's Law Dictionary defines "control" as "the power to . . . manage, direct, or over-

---

[4] The dissent prefers to define "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property." Black's Law Dictionary (7th ed). However, because the etymology of the word "dominion" shows it is likely derived from the concept of ownership, this alternate definition is inappropriate here. See *Random House Webster's College Dictionary* (1995), pp 397-398.

see." See also *Lanzi v Great Atlantic & Pacific Tea Co*, 1999 WL 732963; 25 Conn L Rptr 342 (Conn Super, 1999).[5] In this case, there is no evidence that the contract between Mariner's Pointe and defendant allowed defendant to exercise direction over, dominate, regulate, or command in relation to the parking lot. Instead, the contract merely indicated that defendant would plow the parking lot when plowing was needed and that defendant would salt the parking lot when defendant determined salting was necessary.

In *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998), the Supreme Court stated that "possession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the *actual exercise of dominion and control over the property*." (Emphasis added.) Thus, "even if the [contract] could be construed as granting defendant the [theoretical] right to control the [parking lot], there is no evidence that defendant [actually] exercised that right" on the day of plaintiff's injury. *Little v Howard Johnson Co*, 183 Mich App 675, 679; 455 NW2d 390 (1990); see also *Kubczak, supra*. Rather, the evidence indicated that defendant had not plowed or salted the parking lot since the last snowfall, several days before plaintiff's injury, and that the business tenants of Mariner's Pointe had possession of the parking lot for purposes of conducting business on the day of plaintiff's injury.

---

[5] In *Lanzi, supra* at * 1, the court found that even though the defendant, A & P, had hired a snow removal contractor to remove the snow from its lot, "[t]he defendant . . . was obviously in possession of these premises at the time of the injury, and despite hiring of the snow removal contractor, it retained 'control' which has been defined 'as the power or authority to manage, superintend, direct or oversee.' *Alderman v Hanover Ins Group*, 169 Conn 603, 605; 363 A2d 1102 (1975)."

Therefore, because defendant plowed and salted the parking lot within a reasonable time after the accumulation of snow and then ceded possession of the parking lot to the tenants of Mariner's Pointe for the purpose of conducting business therein, defendant was not in possession of the parking lot at the time of plaintiff's injury. *Anderson v Wiegand*, 223 Mich App 549, 556; 567 NW2d 452 (1997).

In addition, "premises liability is conditioned upon the presence of both possession and control over the land" because the person having such possession and control is " 'normally best able to prevent . . . harm to others.' " *Merritt, supra* at 552, quoting Prosser, Torts (4th ed), § 57, p 351. See also *Kubczak, supra* at 662, quoting *Nezworski v Mazonec*, 301 Mich 43, 56; 2 NW2d 912 (1942). Here, defendant was not the person who was in the best position to prevent plaintiff's injury. Instead, the record indicates that employees of Kroger (a business tenant of Mariner's Point and an invitor of plaintiff) were in the best position to prevent plaintiff's harm. *Anderson, supra*; see also *Minton v Krish*, 34 Conn App 361; 642 A2d 18 (1994).[6]

Hence, because (1) nothing in the contract granted defendant "exclusive authority" over the parking lot,

---

[6] In *Minton, supra* at 364-365, the Connecticut Court of Appeals held independent contractors hired to perform a specific job were "shielded from liability upon completion of the work" because at that point control of the premises reverted to the owner of the premises or one in control of them. Applying this rationale to the case before us, even if the contract provided defendant with possession and control over the parking lot, defendant's control had last been exercised on February 18, 1996, when it plowed and salted after the last snowstorm. Following the completion of that performance, the control of the parking lot reverted to Kroger and the other business tenants of Mariner's Pointe. See *Little, supra*; see also *Hellman v Droege's Super Market, Inc*, 943 SW2d 655, 660 (Mo App, 1997).

(2) defendant did not have actual possession over the parking lot at the time of plaintiff's fall, and (3) Mariner's Pointe's tenants were in the best position to avoid plaintiff's injury, we conclude that defendant "did not exercise the requisite dominion and control over the property and, therefore, [could not] be considered a 'possessor' for purposes of premises liability." *Kubczak, supra* at 664.[7]

Further, assuming defendant was in possession and control of the parking lot at the time of plaintiff's injury, defendant would be liable for plaintiff's injuries only if the condition of the parking lot was caused by defendant's active negligence or the condition " 'ha[d] existed a sufficient length of time that [defendant] should have had knowledge of it.' " *Hampton v Waste Management of Michigan, Inc*, 236 Mich App 598, 604; 601 NW2d 172 (1999), quoting *Berryman v K mart Corp*, 193 Mich App 88, 92; 483 NW2d 642 (1992). Because it had not snowed for several days, had only rained a few hours before reverting to freezing temperature, the ice patch was only the size of two parking spaces, and no other person, including plaintiff, had observed the ice before the fall, plaintiff failed to establish that defendant knew or should have known of the icy condition of the parking lot. See *Hampton, supra* at 605-606. Thus, plaintiff failed to establish that defendant had actual

---

[7] For these reasons, the pretrial deposition testimony cited by the dissent does not conflict with our conclusion that defendant did not have possession of the premises. In addition, because we conclude that summary disposition should have been granted, and because plaintiff did not oppose summary disposition on the basis that additional discovery was required, the trial testimony of Paul Gross, Steven Ziemba, and Alene Chernick referenced by the dissent is irrelevant and inapplicable to our analysis.

or constructive notice of the icy condition of the parking lot and that defendant's inaction (i.e., not salting the lot after raining) was unreasonable. *Id.* at 604.

Because plaintiff did not establish that defendant had notice of the condition of the parking lot, we find the present situation distinguishable from *Osman v Summer Green Lawn Care, Inc,* 209 Mich App 703, 708; 532 NW2d 186 (1995). There, the defendant was found liable because of active negligence in removing the snow from the premises and placing it on a portion of the premises where the defendant knew or should have known it would melt and refreeze. *Id.* at 704. The plaintiff in *Osman* also alleged that the defendant was negligent in failing to keep the premises safe *after* the defendant had *actual notice* of the dangerous condition. *Id.* Here, the evidence did not establish that defendant negligently plowed or salted the parking lot or that defendant had actual knowledge of the dangerous condition; rather, at best, the evidence proved merely that defendant did not inspect and salt the parking lot on the morning of plaintiff's fall. Thus, unlike *Osman,* where the defendant acted under the contract but did so negligently, plaintiff's assertion that defendant was negligent here can only derive from defendant's alleged nonperformance of the contract. While *Courtright v Design Irrigation, Inc,* 210 Mich App 528, 531; 534 NW2d 181 (1995), provides that a person who undertakes a service for another is subject to liability to a " 'third person for physical harm resulting from his failure to exercise reasonable care' " if " 'he has undertaken . . . a duty owed by the other to the third person,' " *id.,* quoting 2 Restatement Torts, 2d, § 324A, p 142, under the circumstances here there was no genuine issue of

material fact that defendant did not unreasonably fail to salt the parking lot. Thus, *Courtright* is distinguishable and of little import here. See *Hampton, supra* at 604.[8]

Finally, *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), and *Auto-Owners Ins Co v Michigan Mut Ins Co*, 223 Mich App 205, 212; 565 NW2d 907 (1997), held that a party to a contract may be held liable in tort for an injury suffered by a third party (i.e., a person not party to the contract) who is foreseeably injured by the negligent performance of the contract. In the instant case, plaintiff has not alleged that defendant negligently performed a contract; rather, plaintiff alleged that defendant was negligent because of its failure to perform a contract. Accordingly, *Clark* and *Auto-Owners* are distinguishable from the instant case; indeed, this case is more akin to *Hart v Ludwig*, 347 Mich 559; 79 NW2d 895 (1956), and *Freeman-Darling, Inc v ASR, Inc*, 147 Mich App 282, 284-286; 382 NW2d 769 (1985).

In *Freeman-Darling*, this Court stated that " 'a tort action will not lie when based *solely* on nonperformance of a contractual duty.' " *Id.* at 284, quoting *Crews v General Motors Corp*, 400 Mich 208, 226; 253 NW2d 617 (1977) (emphasis in original). Here, defendant's negligence occurred, if at all, because defendant did not inspect and salt the Mariner's Pointe parking lot after it had rained.[9] Therefore, the proper question to

---

[8] We also believe that *Courtright* was wrongly decided. If we were unable to distinguish the present case (i.e., by our finding that defendant did not act unreasonably under the facts of this case), we would declare a conflict, MCR 7.215(I)(2), and only follow *Courtright* pursuant to MCR 7.215(I)(1).

[9] In this regard, we note again that plaintiff does not allege that defendant negligently plowed and salted the parking lot after the last snowfall.

be resolved is whether plaintiff had an independent action in tort against defendant regardless of whether defendant breached the contract with Mariner's Point. See *Dahlman v Oakland Univ*, 172 Mich App 502, 506; 432 NW2d 304 (1988). Because defendant had no common-law duty to plow, inspect, or salt the parking lot in which plaintiff was injured, we find that defendant did not breach a duty of due care to plaintiff when it failed to inspect the parking lot on the day in question, and that plaintiff does not have an independent tort action against defendant.

### IV. CONCLUSION

Because plaintiff failed to establish a genuine issue of material fact regarding whether defendant (1) was in possession and control of the parking lot, (2) had knowledge of the icy condition, and (3) was unreasonable in its failure to salt the parking lot given the weather conditions, *Hampton, supra* at 604, we hold that defendant owed no duty to plaintiff; accordingly, we reverse the entry of judgment in favor of plaintiff and remand with instructions for the trial court to enter an order granting defendant summary disposition pursuant to MCR 2.116(C)(10). Because we find that there was no genuine issue of material fact to warrant trial, we do not address either defendant's arguments challenging the trial court's denial of defendant's motion for a direct verdict or defendant's arguments challenging various evidentiary rulings at trial.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

ZAHRA, J., concurred.

WHITE, P.J. (*dissenting*). I respectfully disagree with the majority's determinations regarding whether defendant had a duty of care, possession and control of the parking lot, and constructive notice of the condition of the parking lot, and therefore dissent.

I

Plaintiff adequately established defendant's common-law duty of care arising from the contract. I observe that plaintiffs did not plead a breach of contract action, and the case was at all times a negligence action.

Thus, the issues stressed by defendant[1]—whether plaintiff could sue for breach of contract as a third-party beneficiary and whether the contract expressly placed liability for injury to third persons on defendant—are not relevant to the case before us. Nevertheless, as the trial court recognized, the existence and terms of the contract were not irrelevant to the negligence action.

In *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), the Supreme Court noted:

> [W]hile this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing

---

[1] As subarguments to the possession and control argument, defendant asserts that its contract with Mariner's Pointe did not confer third-party beneficiary status on plaintiff, did not place liability for injury to third parties on defendant, and did not guarantee that the parking lot would be free from snow and ice at all times.

agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. But it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort. This being so, the existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based.

In *Clark*, a contractor repaired, cleaned, and painted a city water storage tank and applied a slippery substance to the ladder and surface of the tank, when the contractor knew or should have known that an inspector would later inspect the project. The inspector fell from the ladder and sustained injuries. The trial court directed a verdict of no cause of action on both the plaintiff's contract and tort counts, concluding regarding the latter that tort may not be founded on the failure to perform a contract. *Id.* at 259. The Supreme Court affirmed with regard to the contract count "since the plaintiff was not a party to the contract in any sense of the term, [and thus could not] enforce an obligation created by it," but reversed on the tort count:

A favorable-to-plaintiff view of the evidence indicates that pursuant to the contract between defendant and the city of Otsego, plaintiff was the duly authorized inspector of the project with obligations of general inspection as well as the specific duty of inspecting the various stages of the repair operation before defendant was authorized to proceed to the next step in the repair work. Far from being a trespasser on the premises, plaintiff was at least a licensee, or possibly an invitee. The general duty of a contractor to act so as not to unreasonably endanger the well-being of

employees of either subcontractors or inspectors, or any-
one else lawfully on the site of the project, is well settled.
[*Id.* at 262].

See also *Garden City Osteopathic Hosp v HBE Corp*,
55 F3d 1126 (CA 6, 1995) (quoting portions of the
above paragraph from *Clark, supra*).

Those foreseeably injured by the negligent perform-
ance of a contractual undertaking are owed a duty of
care. *Auto-Owners Ins Co v Michigan Mut Ins Co*,
223 Mich App 205, 212; 565 NW2d 907 (1997), quoting
*Osman v Summer Green Lawn Care, Inc*, 209 Mich
App 703, 708; 532 NW2d 186 (1995), overruled in part
on other grounds *Smith v Globe Life Ins Co*, 460
Mich 446, 455-456, n 2; 597 NW2d 28 (1999). Contrary
to defendant's assertions, plaintiff need not be a third-
party beneficiary to the contract, and no special rela-
tionship is required.[2]

In *Osman*, the defendant snow-removal company
sought summary disposition on the grounds that it
did not own the premises and its contract with the
owner stated that it assumed no duties of the owner.
This Court reversed the circuit court's grant of sum-
mary disposition, concluding that the contract did not
absolve the defendant of liability for its own negli-
gence and that the duty to provide snow-removal ser-
vices in a reasonable manner was established not

---

[2] Defendant's reliance on *Krass v Tri-County Security, Inc*, 233 Mich
App 661; 593 NW2d 578 (1999), is misplaced. *Krass* rejected the notion
that the plaintiff was a third-party beneficiary of the security contract.
However, the instant case does not rest on a third-party beneficiary the-
ory. Additionally, *Krass* rejected the notion of common-law tort liability
because under *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495,
498-499; 418 NW2d 381 (1988), there was no duty to protect the plaintiff
from the criminal acts of a third party in the absence of special circum-
stances. No such criminal acts of a third party are involved here.

only by the terms of the contract, but also by the common law. Defendant's effort to distinguish *Osman* on the basis that the defendant snow-removal company's liability in *Osman* was based on its contractual assumption of liability is unpersuasive. The *Osman* Court explained:

> The trial court incorrectly interpreted the terms of this contract to limit the duty defendant owed to plaintiff. Not only did the contract articulate that defendant would remain liable for its negligent conduct, but such duty also arose out of defendant's undertaking to perform the task of snow plowing. The duty allegedly owing is that which accompanies every contract, a common-law duty to perform with ordinary care the things agreed to be done. . . .
>
> Defendant argues that plaintiff was not in privity of contract with defendant and the premises owner, and therefore was owed no duty. While it may be true that plaintiff is not owed a duty under the contract itself, the contract is the basis out of which arises defendant's common-law duty to plaintiff. . . .
>
> \*       \*       \*
>
> . . . Even if the language [of the contract] were able to shift liability to [the owner], defendant would still owe plaintiff a common-law duty separate and apart from the contract itself. Duty of care not only arises out of contractual relationship, but it also arises by operation of law, a general duty owed by defendant to the public of which plaintiff is a part. *Clark, supra* at 260-261. Therefore, even though plaintiff was not in privity of contract, she was owed a duty of ordinary care by defendant. [209 Mich App 707-710.]

II

The trial court did not err in concluding that the contract granted defendant the requisite possession

and control for purposes of snow removal to impose on it a duty of care.[3]

The contract S & C and Mariner's Pointe entered into for snowplowing and salting services provided that Mariner's Pointe would pay S & C a flat fee for snowplowing for the 1995-96 season. Salting was addressed in the contract separately from the flat snowplowing fee; the contract specified that salting of the parking areas would be billed at $90 a ton of salt and that salt application was "by Contractor discretion," rather than "by Customer request." The contract also provided that all work was "to be completed in a professional manner according to standard practices."

Pat Cimino, one of defendant's owners, testified at deposition that he and his son-in-law, Paul Sifford, incorporated S & C around 1980. Cimino responded affirmatively when asked at deposition whether it was his understanding that S & C had "total discretion as to when you would salt the lots at Mariner's Point," and that either he or Sifford would make the decision after talking to each other, using weather conditions as the criterion. Paul Sifford testified at deposition that he interpreted the contract language that left salt application to S & C's discretion as meaning that Mariner's Pointe could also call S & C and request salting.

Alene Chernick, the property manager and part owner of Mariner's Pointe, and the person who negotiated the instant contract with defendant was deposed before trial and testified at trial. Chernick testified that Mariner's Pointe hired defendant to

---

[3] The question whether Mariner's Pointe could relieve itself from liability through its contract with defendant is a separate question that has no relevance to defendant's liability.

remove snow and ice from the parking lot, that defendant had sole responsibility for snow and ice removal, and total control of the parking lot for the purposes of removing snow and ice, and that under the contract defendant had discretion to determine when to apply salt to the parking lot. On the basis of the contract language stating that defendant would apply salt "by Contractor discretion," and a discussion at the time the contract was signed that defendant would keep track of the need to salt, Chernick assumed that defendant would inspect the premises and salt when and where needed. Chernick discussed with defendant the fact that Kroger opened early in the morning and the resultant need for early morning inspection and action by defendant, and expected defendant to inspect the parking lot before the stores in the mall opened when there was a period of rain and freezing temperatures. Chernick testified that defendant was paid to do so.

Chernick testified that her office was in Southfield, that Mariner's Pointe did not have personnel on-site at the shopping center, although she visited the shopping center at least once a week, and that inspections were left to defendant. Chernick did not keep a log of her visits to the shopping center and could not say whether she had been there in the days before plaintiff's fall. In general, if Chernick saw on one of her visits to the shopping center that the parking lot was snowy or icy, she would call S & C. Chernick testified that S & C was recommended to her and that she relied on defendant's experience and knowledge of snow removal and salting.

The majority seizes upon a definition of "possession" that includes the concept of exclusive authority.

Black's Law Dictionary (7th ed). However, this is the second definition set forth in Black's, and the first definition, "[t]he fact of having or holding property in one's power; the exercise of dominion over property," does not include the exclusivity aspect. Regarding control, there was sufficient evidence that defendant had the power or authority to manage, direct, or oversee the parking lot for purpose of snow removal and salting.

III

I also disagree with the majority's determination that plaintiff failed to present sufficient evidence that defendant had constructive notice of the condition of the parking lot to survive summary disposition. There was sufficient evidence both in response to the motion for summary disposition and at trial that defendant should have known of the hazardous condition. S & C invoices submitted below indicated that S & C plowed and salted on February 14, 1996, following 4½ inches of snowfall, dropping five tons of salt on the parking lot; salted on February 15, 1996, dropping 3½ tons of salt on the parking lot; and salted on February 16, 1996, dropping 4½ tons of salt on the parking lot. In answers to requests for admission, defendant stated that it applied salt to the parking lot at issue on February 18, 1996, and admitted that no salt was applied from February 19 to 23, 1996. Plaintiff was injured on February 22.

Paul Gross, plaintiffs' meteorological expert, testified that on the day before plaintiff fell, February 21, 1996, it rained continuously from approximately 8:00 A.M. until 2:30 P.M., and the temperature dropped to freezing around 9:00 P.M. and remained at or below

freezing through the night. Gross testified that on February 22, 1996, the temperatures remained at or below freezing until about one hour before plaintiff fell, and that at the time of the fall, the temperature went up to thirty-three degrees. He testified that the ice would have begun forming at approximately 9:00 to 11:00 P.M. on the evening of February 21, 1996, and would have existed on the morning of plaintiff's fall, "it did not develop moments before the incident." Gross testified that for the parking lot to be safe to pedestrian traffic, it would have had to have been inspected before the Kroger employees started arriving around 6:30 A.M. that day. Gross testified that salt applied to ice under these circumstances would have been highly effective at diminishing the ice area. Steven Ziemba, a safety specialist, testified that ice will look dark if the pavement below is dark, and that a reasonable inspection should not be conducted from a truck. Ziemba testified that defendant's conduct was not reasonable because it did not conduct a proper inspection and did not apply salt.

I conclude that the evidence could support reasonable inferences that defendant should have known of the icy condition and failed to take reasonable measures.