PSAILA v SHILOH INDUSTRIES, INC

Docket No. 236975. Submitted August 19, 2003, at Detroit. Decided September 9, 2003, at 9:05 A.M. Leave to appeal sought.

John Psaila brought an action in the Macomb Circuit Court against Shiloh Industries, Inc., and others, alleging that his employment, which was terminable at will, was wrongfully terminated after he complained about unpaid sales commissions owed to him by the defendants. Contending that the plaintiff could not rely on the sales representatives' commissions act, MCL 600.2961, as the basis for a public policy exception to the general rule of at-will employment, the defendants moved for summary disposition and directed verdict in their favor. The court, Edward A. Servitto, Jr., J., denied the motions, and a jury returned a verdict and award of damages for the plaintiff. The defendants appealed.

The Court of Appeals *held*:

While some grounds for terminating an employee may be so contrary to Michigan's public policy that an exception may be made to the at-will employment doctrine, MCL 600.2961 does not provide a public policy exception to the at-will employment of a sales representative who is paid by commission. The statute imposes a duty on an employer to pay sales commissions owed to a terminated sales representative, but it does not prohibit an employer from terminating a sales representative. The statute only provides a cause of action for sale representatives who have already been terminated.

Reversed and remanded for entry of judgment for the defendants.

*Stark, Reagan & Finnerty, P.C.* (by *Joseph C. Bird* and *John J. Cooper*), for John Psaila.

*Harvey Kruse P.C.* (by *Dennis M. Goebel, Barry B. Sutton, Emily S. Ross,* and *Julie Nichols*) for Shiloh Industries, Inc., and others.

Before: Zahra, P.J., and Talbot and Owens, JJ.

PER CURIAM. Defendants appeal as of right from a jury verdict of $375,385 on plaintiff John Psaila's wrongful termination claim.[1] We reverse because MCL 600.2961 does not create a public policy exception to the general rule of at-will employment.

This case arises out of defendants' termination of plaintiff's employment. In 1995, C&H Design, a tool design company in the automotive industry, hired plaintiff as a sales representative. Plaintiff's immediate supervisor was Kenneth Hudson. Kenneth Hudson's supervisor was Mark Bartolomucci, who owned C&H Design. As a side business, Kenneth Hudson and Bartolomucci also owned and operated Hudson Group Enterprises, Inc., a manufacturing representative company. In addition to his employment with C&H Design, plaintiff occasionally represented defendant Hudson Group. In fact, plaintiff's 1997 employment agreement with C&H Design noted that plaintiff would receive additional compensation for sales done for Hudson Group.

Plaintiff negotiated a set of agreements related to the production of the Saturn automobile by General Motors Corporation. In particular, plaintiff assisted a company named Aetna in receiving a substantial amount of production work. In fact, Aetna received so much business that it was required to outsource some of that production work. Aetna allowed plaintiff to try to find a company to do that work. Plaintiff, Kenneth Hudson, and Bartolomucci apparently agreed to split any commissions earned by plaintiff if he found a company to do Aetna's outsourced work.

---

[1] For purposes of this decision, "defendants" refers only to appellants Shiloh Industries, Inc., Shiloh Corporation, Greenfield Die & Manufacturing, C&H Design, C&H Die Technology, and Majenna Industries.

These commissions were to be run through Hudson Group, rather than C&H Design.

Eventually, plaintiff happened upon Greenfield Die & Manufacturing. Aetna approved Greenfield, and Greenfield agreed to pay Hudson Group a three percent commission. Thus, under their agreement, plaintiff, Kenneth Hudson, and Bartolomucci were to split that commission equally.

At about the same time, Bartolomucci was negotiating the sale of C&H Design to Shiloh, the parent company of Greenfield. An asset sale was completed in August 1997, and Shiloh acquired the C&H Design name. The "old" C&H Design terminated plaintiff's employment, and the "new" C&H Design rehired plaintiff as an at-will employee.

At the time of the asset sale, plaintiff expressed concern about commissions that he had not received. Plaintiff continued to express this concern through the first several months of his employment. Plaintiff's complaints eventually led to his termination.

Plaintiff filed the instant lawsuit, seeking to recover unpaid commissions from all parties under MCL 600.2961. Plaintiff also sought damages from defendants for wrongful termination, contending that he was terminated for exercising his statutory right, MCL 600.2961, to recover those unpaid commissions. Although plaintiff reached a settlement agreement regarding his unpaid commissions, his wrongful termination claim proceeded to a jury trial. The jury found that defendants wrongfully terminated plaintiff's employment, and awarded him $375,385 in damages, plus interest, attorney fees, and costs.

On appeal, defendants contend that the trial court erred in denying their motions for summary disposi-

tion and directed verdict. Specifically, defendants contend that plaintiff's wrongful termination claim should have been dismissed as a matter of law because plaintiff was an at-will employee. Defendants contend that, contrary to the trial court's ruling, MCL 600.2961 does not create an exception to at-will employment.

We review de novo a trial court's ruling on a motion for summary disposition. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). We also review de novo a trial court's ruling on a directed verdict motion. *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 701; 644 NW2d 779 (2002).

Here, there is no dispute that plaintiff was an at-will employee at the time of his termination. Generally, either party to an at-will employment agreement may terminate it at any time and for any, or even no, reason. See *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). Thus, defendants could terminate plaintiff's employment at any time and for any reason.

Plaintiff contended, however, that he was wrongfully terminated because MCL 600.2961 created an exception to the general rule of at-will employment. Indeed, in *Suchodolski, supra,* our Supreme Court recognized that some grounds for terminating an employee may be so contrary to Michigan's public policy that an exception may be made to the at-will employment doctrine. Plaintiff contended that MCL 600.2961 created such an exception. Plaintiff alleged that he was terminated for exercising rights conferred under MCL 600.2961 and, therefore, his termination of employment violated Michigan's public policy.

In denying defendants' motions, the trial court opined that the purpose of MCL 600.2961 is to ensure that sales representatives are paid their full commissions, especially when those commission fall due after termination of the employment relationship. Whether MCL 600.2961 does, in fact, provide a public policy exception to employment that is otherwise terminable at will is a question of first impression.

In determining what constitutes the public policy of Michigan, we are guided by *Terrian v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002), where our Supreme Court stated:

> In defining "public policy," it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not simply assert what such policy *ought* to be on the basis of the subjective views of individual judges. This is grounded in Chief Justice Marshall's famous injunction to the bench in *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803), that the duty of the judiciary is to assert what the law "is," not what it "ought" to be.
>
> In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy. [Citation omitted; emphasis added.]

Plaintiff's public policy claim is rooted in MCL 600.2961. We therefore focus our analysis on this stat-

ute. MCL 600.2961(4) imposes a duty on an employer to pay sales commissions to a terminated sales representative within forty-five days of the date of termination or posttermination accrual. An employer that intentionally violates this subsection may be liable for the lesser of treble damages or actual damages plus $100,000. MCL 600.2961(5). But nothing in the statute prohibits an employer from terminating a sales representative. Quite the contrary, MCL 600.2961 only provides a cause of action for sales representatives that have been already been terminated.

Absent from the statutory language is any indication that our Legislature was concerned with commissions earned, but not paid, *during* the sales representative's employment. Our Legislature did not, for example, provide that all sales commissions due be paid with forty-five days of becoming due. Nor is there any indication that our Legislature was at all concerned with preserving the employment relationship between the sales representative and the employer. Again, the only relevant time frame for demanding commissions was in respect to the date that the employment terminated. And the statute did not provide for the recovery of lost wages.

Accordingly, we are not persuaded that MCL 600.2961 confers upon a sales representative the right to complain about a current employer not promptly paying sales commissions. If we were to conclude that the Legislature's act of providing a remedy for the failure to pay commissions after termination evidences a public policy to protect commissioned sales representative before termination, we would be usurping the power of the Legislature to create Michigan's social policy through duly enacted legislation.

This we cannot do. *Marbury, supra.* Had the Legislature intended to protect commissioned sales representatives before termination it would have expressly provided such protection within the legislation.

We conclude that MCL 600.2961 does not provide a public policy exception to plaintiff's employment at will. *Id.* Therefore, the trial court erred as a matter of law in denying defendants' motions to dismiss plaintiff's wrongful termination claim. *Beaudrie, supra* at 129; *Derbabian, supra* at 701.

We reverse the judgment entered in favor of plaintiff and remand for entry of a judgment in favor of defendants. We do not retain jurisdiction.