*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PENNY GABRIELSON,

        Plaintiff-Appellant,

v

THE WOODS CONDOMINIUM ASSOCIATION,
INC. and RITA SAYRE,

        Defendants-Appellees,

and

J.P. CARROLL CO., INC., GERALDINE
KOLICKI, MARILYN L. HIRVELA LIVING
TRUST, and DAWN SCHULTZ,

        Defendants.

FOR PUBLICATION
January 4, 2024
9:00 a.m.

No. 364809
Wayne Circuit Court
LC No. 20-016554-NO

PENNY GABRIELSON,

        Plaintiff-Appellant,

v

THE WOODS CONDOMINIUM ASSOCIATION,
INC. and J.P. CARROLL CO., INC.,

        Defendants-Appellees,

and

RITA SAYRE, GERALDINE KOLICKI,
MARILYN L. HIRVELA LIVING TRUST, and
DAWN SCHULTZ,

No. 364813
Wayne Circuit Court
LC No. 20-016554-NO

Defendants.

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

CAVANAGH, J.

These consolidated appeals arise from a single premises-liability action and present the issue whether our Supreme Court's recent decision in *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430)—overruling *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001)—is retroactive. We conclude that it operates retroactively, applying to this case and all cases currently pending on direct appeal.

In Docket No. 364809, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant Rita Sayre ("Sayre"). In Docket No. 364813, plaintiff appeals by right the same trial court order, which also granted summary disposition in favor of defendants The Woods Condominium Association ("the association") and J.P. Carroll Company, Inc. ("J.P. Carroll").[1] In Docket No. 364809, we reverse the trial court's order regarding plaintiff's premises-liability and statutory claims against Sayre and remand for further proceedings. In Docket No. 364813, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2020, plaintiff was injured when she fell in front of her home in The Woods Condominium complex in Livonia. Plaintiff rented a room from and lived with Sayre, who owned the condominium unit. The building plaintiff lived in had four units, and the front doors of the four units were located on a landing. The landing was a single step up from the sidewalk leading to the front doors. The landing and the front of the step up to the landing were carpeted. There was a rubber strip that was affixed to the carpet over the lip where the front of the step met the surface of the landing. The rubber strip was not properly adhered to the carpet, and the front of the strip would curl upward and away from the front of the step on hot days. While plaintiff approached the step on the day of her fall, she was holding the handrail to her left side. As plaintiff attempted to step up onto the landing, her right foot got caught on the front of the curled-up rubber strip and she fell. Defendant Geraldine Kolicki ("Kolicki"),[2] who lived next door to plaintiff, heard plaintiff fall and came outside to check on her. Kolicki asked plaintiff if she should call an ambulance, and plaintiff said she did not need one. Plaintiff testified that she told Kolicki that she fell on the step, but Kolicki testified that plaintiff told her that she tripped on the doormat in front of Sayre's door. Plaintiff went to the emergency room later that night. As a result of the fall,

---

[1] The trial court also granted summary disposition in favor of defendants Geraldine Kolicki, the Marilyn L. Hirvela Living Trust, and Dawn Schultz in the same order. Plaintiff has not appealed the trial court's order with respect to those defendants, and those defendants are not parties to this appeal.

[2] Many of the documents in the record spell Kolicki's last name as "Krolicki." We use the spelling "Kolicki" because that is how it appears in the case caption of the trial court's order.

plaintiff fractured bones and injured a ligament in her right wrist, suffered a hematoma near her eye from her head striking the landing, and injured her ribs, elbow, and shoulder.

When the condominium complex was built, the landings were not carpeted. The addition of carpet to a landing was considered by the association to be a modification to the landing for which the association was not responsible. Kolicki had moved into her unit about 12 to 15 years before plaintiff's fall, and the landing was carpeted when Kolicki moved in. Within about two years of when Kolicki moved in, the association told her and the other three co-owners, who no longer owned the units when plaintiff fell, that they had to replace the carpet. Kolicki and the other three then-co-owners split the cost of replacing the carpet and repairing the cement underneath. Sayre moved into her unit in 2013, and the rubber strip had not been installed yet. Sometime thereafter, the association told the four then-co-owners that they had to fix fraying carpet on the edge of the step and that they could fix it by attaching a rubber strip. One of the four co-owners personally installed the rubber strip. After the rubber strip was installed, the association never told the owners to make any other repairs to the landing.

On December 21, 2020, plaintiff filed her original complaint, alleging that both the association and J.P. Carroll, which managed the condominium complex, were separately liable to plaintiff under claims of general and active negligence, premises liability, negligence per se, and statutory violations. The association and J.P. Carroll filed a notice of nonparty at fault, alleging that Sayre was responsible for a portion or all of the fault in this case. Plaintiff filed a first-amended complaint that added Sayre as a defendant in this case and brought the same four claims against Sayre that plaintiff brought against the association and J.P. Carroll. Sayre then filed a notice of nonparties at fault, alleging that the owners of the other three units who shared the entrance to Sayre's condominium when plaintiff fell, Kolicki, Marilyn Hirvela ("Hirvela"), and Dawn Schultz ("Schultz"), were also responsible for the condition of the step. Plaintiff filed a second-amended complaint to add Kolicki, Hirvela, and Schultz as defendants and brought against each of them the same four claims as those brought against the other defendants. Hirvela's attorney filed a notice that Hirvela was deceased, and the trial court entered a stipulated order to amend the caption in this case to reflect that the Marilyn L. Hirvela Living Trust ("the Hirvela Trust") replaced Hirvela as a defendant.

Sayre, Kolicki, and the Hirvela Trust separately moved for summary disposition on all of plaintiff's claims against them pursuant to MCR 2.116(C)(10) (no question of material fact). Although the arguments offered by Sayre, Kolicki, and the Hirvela Trust varied slightly, each argued that they did not owe plaintiff any duty regarding the step and landing because any such dangerous condition was open and obvious. The association and J.P. Carroll jointly moved for summary disposition pursuant to MCR 2.116(C)(10). The association and J.P. Carroll argued that they were entitled to summary disposition on the bases that they did not owe a duty to plaintiff because unit-owners were financially responsible for the carpet on the step and landing, the condition of the step was open and obvious with no special aspect, and they did not have a statutory duty to plaintiff because they were not in a lease agreement with her.

Plaintiff filed separate responses to the motions for summary disposition brought by Sayre, Kolicki, and the Hirvela Trust, making the same substantive arguments in each response. Plaintiff argued that those defendants had possession and control of the step as co-owners of the building; those defendants had common law and statutory duties to prevent the condition of the step from

causing harm to plaintiff; the hazard was not open and obvious because it was not readily observable and was effectively unavoidable; and those defendants had actual or constructive notice of the hazard because they installed the rubber strip. Plaintiff filed a response to the association and J.P. Carroll's motion for summary disposition. Plaintiff argued that the association and J.P. Carroll were owners of the land with a duty to plaintiff because the association is comprised of all the condominium owners, who have joint ownership of the common areas. Plaintiff made the same substantive argument regarding whether the hazard was open and obvious as she did in her other responses. Plaintiff also argued that the association and J.P. Carroll violated their statutory duties to ensure all common areas were fit for their intended purpose because of the defective condition of the step, and the open and obvious doctrine was not a defense against the statutory violation.

On November 1, 2022, the trial court dispensed with oral argument and entered four orders granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). The trial court concluded that plaintiff could only bring a premises-liability claim because she alleged injury caused by a condition on the land and that the hazard was open and obvious because plaintiff knew it was there. On November 9, 2022, the trial court entered an additional order granting summary disposition in favor of defendants and indicating that it was the final order in this case.[3] On February 3, 2023, plaintiff filed separate claims of appeal of the trial court's order. This Court entered orders consolidating these appeals pursuant to MCR 7.211(E)(2).[4]

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *Id*. at 160. The reviewing court considers pleadings, affidavits, depositions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

---

[3] Although the trial court's order resolved all claims in this case, Schultz did not participate in the trial court proceedings. It appears from the record that Schultz was never personally served process in this case and may be deceased.

[4] *Gabrielson v The Woods Condo Ass'n*, unpublished order of the Court of Appeals, entered February 22, 2023 (Docket No. 364813); *Gabrielson v The Woods Condo Ass'n*, unpublished order of the Court of Appeals, entered February 23, 2023 (Docket No. 364809).

-4-

## III. JUDICIAL DECISION WHILE APPEAL PENDING

While this matter was pending on appeal, plaintiff filed a supplemental brief regarding our Supreme Court's recent decision in *Kandil-Elsayed*, ___ Mich ___; slip op at 2, and argued that the Court overruled the holding in *Lugo* "that courts must analyze both the open and obvious danger doctrine and any exceptions to it under the element of duty." More specifically, the *Kandil-Elsayed* Court held:

> The open and obvious nature of a condition remains a relevant inquiry in a premises-liability case. However, to the extent prior cases have held that it should be analyzed as a part of a land possessor's duty, those cases are overruled. Rather, the open and obvious nature of a danger—i.e., whether it is 'reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection,' *Hoffner [v Lanctoe]*, 492 Mich [450,] 461[; 821 NW2d 88 (2012)]—is relevant to the defendant's breach and the plaintiff's comparative fault. [*Id*.; slip op at 39-40.]

Plaintiff argued that, because the trial court dismissed all her claims after holding that they were barred by the open and obvious doctrine, the trial court's decision must be reversed and her case reinstated.

Defendants responded by filing a motion for leave to file a supplemental brief, which this Court granted,[5] and argued that the holding in *Kandil-Elsayed* should not have retroactive application. Defendants argued that the decision established a new principle of law by abrogating the open and obvious danger doctrine. Defendants argued that our Supreme Court could not have intended a punitive purpose of punishing premises-liability defendants who, for 30 years, understood that they had no duty to protect invitees against avoidable open and obvious dangerous conditions. Further, defendants argued, such landowners have a right to rely on the existing state of the law to determine the scope of their legal duties. And the administration of justice is not served "by imposing liability against landowners or proprietors whose remedial conduct or inaction toward a physical condition was not actionable on the date a cause of action accrued." Accordingly, defendants argued, the trial court's order granting summary disposition in favor of defendants should be affirmed.

As the parties have argued, the open and obvious doctrine has long been held not to be an exception to an invitor's duty of care; rather, it was an "integral" part of determining whether a duty existed regarding a specific hazard. *Hoffner v Lanctoe*, 492 Mich 450, 476; 821 NW2d 88 (2012). In *Lugo*, 464 Mich at 517, our Supreme Court held that a landowner had no duty to warn invitees and minimize risk created by an open and obvious danger unless the invitee could prove that there were "special aspects" about the condition that made "even an open and obvious risk unreasonably dangerous[.]" A condition on the land could have special aspects when it created "an unreasonably high risk of severe harm," such as the danger posed by "an unguarded thirty foot deep pit in the middle of a parking lot." *Id*. at 518. A condition could also have special aspects

---

[5] *Gabrielson v The Woods Condo Ass'n*, unpublished order of the Court of Appeals, entered December 4, 2023 (Docket Nos. 364809 and 364813).

when it was "effectively unavoidable," meaning an invitee had no choice but to confront the condition. *Id*. The *Lugo* Court offered that an example of an effectively unavoidable condition would be if the floor at the only exit to a commercial building was covered in standing water. *Id*.

In *Kandil-Elsayed*, ___ Mich at ___; slip op at 2, 29, our Supreme Court overruled the line of cases holding that the open and obvious doctrine applied to a land possessor's duty of care, specifically overruling *Lugo*, 464 Mich 512. Rather, the Court held, the open and obvious nature of a condition on land is relevant to the breach element and the parties' comparative fault, not to the issue of a land possessor's duty, because Michigan has adopted a comparative fault regime for negligence claims. *Kandil-Elsayed*, ___ Mich at ___; slip op at 2, 10, 39. The Court explained that, decades ago, Michigan courts had improperly placed the open and obvious doctrine within a court's duty analysis on the basis of the state's later-abandoned contributory-negligence doctrine— under which any negligence on the part of a plaintiff automatically barred recovery—and ambiguous language regarding the elements of negligence in premises-liability claims found in the First and Second Restatements of Torts. *Id*. at ___; slip op at 10-19. The *Kandil-Elsayed* Court concluded that the *Lugo* Court erred by holding that the open and obvious doctrine falls under a land possessor's duty because the holding was inconsistent with the Legislature's adoption of comparative fault in negligence actions, under which a plaintiff's damages are reduced on the basis of the plaintiff's own negligence rather than barred entirely. *Id*. at ___; slip op at 29-30, 40. The Court stated that applying the open and obvious doctrine to the analysis of a land possessor's duty had effectively returned premises-liability claims to the contributory-negligence framework. *Id*. at ___; slip op at 30. The Court pointed out that, since *Lugo* was decided, courts would frequently say that the determination whether a danger is open and obvious is based on an objective standard, and then would bar a plaintiff's claim because the plaintiff, for example, was not looking at the ground before a fall—with the analysis in *Lugo* being a prime example. *Id*. at ___; slip op at 30-32. The Court also overruled the special aspects doctrine because the extent of risk posed by a hazard properly relates to how a reasonable land possessor would warn of and protect against the hazard, noting that the extreme examples of special aspects offered in *Lugo* have frequently been improperly used as litmus tests for determining whether a special aspect exists. *Id*. at ___; slip op at 33-36.

Under the new premises-liability framework outlined by the *Kandil-Elsayed* Court, a land possessor's duty to an invitee remains the same, as well as the three traditional categories of entrants upon the land of another. *Kandil-Elsayed*, ___ Mich at ___; slip op at 39. The open and obvious nature of a condition remains a relevant inquiry in a premises liability case, but only to the element of breach and a plaintiff's comparative fault. *Id*. at ___; slip op at 39-40. The standard for assessing whether the allegedly dangerous condition is open and obvious remains objective, but a plaintiff's actions may be used as evidence of how a reasonable person would confront a dangerous condition. *Id*. at ___; slip op at 40. The precepts remain intact that "landowners are not insurers" and that "both the possessors of land and those who come onto it must exercise common sense and prudent judgment when confronting hazards on the land." *Id*. at ___; slip op at 42, quoting *Hoffner*, 492 Mich at 459. And a landowner only has the duty to take actions that are reasonable in response to a hazard. *Id*. at ___; slip op at 44. Once a court finds that a defendant owed the plaintiff a duty in premises liability, it becomes a question for the jury whether the defendant breached that duty. *Id*. at ___; slip op at 43-44. After a jury finds that all the elements of a premises-liability claim have been satisfied, "the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly." *Id*. at ___; slip op at 44. The

open and obvious nature of the hazard, as well as the plaintiff's choice to confront that hazard, may be considered in determining the plaintiff's comparative fault. *Id.*

The issue we must address is whether the *Kandil-Elsayed* decision is retroactive, and thus, applicable to this case as well as other pending cases. Whether a judicial decision should have retroactive application is a question of law and is reviewed de novo. *Johnson v White*, 261 Mich App 332, 336; 682 NW2d 505 (2004). As our Supreme Court has repeatedly held: "It is well established that the general rule is that judicial decisions are to be given complete retroactive effect." *League of Women Voters of Mich v Secretary of State*, 508 Mich 520, 564-565; 975 NW2d 840 (2022) (quotation marks and citation omitted). The test for deciding the issue of retroactivity was set forth in *Pohutski v Allen Park*, 465 Mich 675; 641 NW2d 219 (2002). See *id.* at 565. The threshold question is whether the decision establishes a "new principle of law." *Id.*, quoting *Pohutski*, 465 Mich at 696. " 'A rule of law is *new* for purposes of resolving the question of its retroactive application . . . either when an established precedent is overruled or when an issue of first impression is decided which was not adumbrated by any earlier appellate decision.' " *Id.* at 566, quoting *People v Phillips*, 416 Mich 63, 68; 330 NW2d 366 (1982). Here, it is clear that an established precedent—*Lugo*—was overruled. So the threshold question has been satisfied.

Because the *Kandil-Elsayed* decision establishes a new principle of law, we must next consider three factors: " '(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.' " *League of Women Voters*, 508 Mich at 565-566, quoting *Pohutski*, 465 Mich at 696. After consideration of these three factors, we conclude that retroactive application is appropriate.

First, the purpose of the new rule of law, as explained by the *Kandil-Elsayed* Court with regard to its stare decisis analysis, is to eliminate the vestiges of the contributory-fault doctrine that remained in our premises-liability law despite "Michigan's clear policy of comparative fault." *Kandil-Elsayed*, ___ Mich at ___; slip op at 30. Further, because the "open and obvious" analysis was considered with respect to the duty element, the court and not a jury was deciding whether plaintiff was or was not negligent—in direct contravention of MCL 600.2957(1) which states that, in a tort action, "the liability of each person shall be allocated . . . by the trier of fact . . . ." *Id.*; slip op at 21, 32. Thus, moving the consideration of the plaintiff's fault with respect to an allegedly open and obvious danger from the duty analysis to the breach analysis restores consistency to Michigan's negligence jurisprudence. And the overruling of the "special aspects doctrine" of *Lugo* eliminates the potential for unfairness engendered by incongruent interpretations of how that standard is to be applied to real-world scenarios. See *id.*; slip op at 34-35.

Second, we consider the extent of reliance on the old rule of law, i.e., the open and obvious doctrine. As the *Kandil-Elsayed* Court noted, the open and obvious doctrine as adopted in *Lugo* "defies practical workability because it has generated considerable confusion and division." *Kandil-Elsayed*, ___ Mich at ___; slip op at 38. In other words, the law as stated in *Lugo* could not be predictably relied upon; parties and the courts have grappled with its standard and its application in premises-liability litigation for years. *Id.*; slip op at 39. As the *Kandil-Elsayed* Court noted, overruling *Lugo* "ends two decades of uncertainty and arguments, where parties and lower court have had to navigate an unclear standard and varying applications." *Id.* Accordingly, retroactive application of the *Kandil-Elsayed* decision will not result in undue hardship.

Finally, the administration of justice will not be adversely effected by the retroactive application of the *Kandil-Elsayed* decision. Possessors of land need only to have exercised reasonable care under the circumstances—as has always been the case. *Id.*; slip op at 44. Under *Kandil-Elsayed*, the finder of fact will be apprised of those circumstances—including the open and obvious nature of the allegedly dangerous condition—and will consider the comparative fault of each party, including the plaintiff's choice to confront the danger. See *id.*; slip op at 42, 44. Moreover, the retroactive application of the decision will actually further goals of the administration of justice by ensuring that premises-liability claims are adjudicated by the same standard applicable to other negligence claims, affording claimants the same right to have their claims considered under a comparative-fault regime rather than a contributory-negligence scheme.

Further, the *Kandil-Elsayed* Court applied the rule of law it announced to the parties in that case, and has also vacated our judgments and remanded numerous cases to this Court for reconsideration in light of its decision in *Kandil-Elsayed*, in lieu of granting leave to appeal. See, e.g., *Grilli v Mon Jin Lau, Inc*, ___ Mich ___; 996 NW2d 454 (2023); *Mihaltan v Redford Twp Hardware Realty, LLC*, ___ Mich ___; 996 NW2d 457 (2023); *Ramic v Bullock Enterprises, LLC*, ___ Mich ___; 996 NW2d 126 (2023); *Hassen v Hopson*, ___ Mich ___; 995 NW2d 338 (2023); *Keenmon v Village Squire Apartments, LLC*, ___ Mich ___; 995 NW2d 324 (2023); *Hudgins v Faraj*, ___ Mich ___; 995 NW2d 325 (2023). Although not dispositive, it appears to us through these actions that our Supreme Court intended retroactive application of its holding in *Kandil-Elsayed*. See *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 184; 909 NW2d 38 (2017), aff'd in part, vacated in part 504 Mich 985 (2019).

In summary, we conclude that the rule of law announced in *Kandil-Elsayed* should operate retroactively and applies to all cases currently pending on direct appeal, including this case. See *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 94; 795 NW2d 205 (2010) (citation omitted).

## IV. DUTY

Plaintiff argues that Sayre, the association, and J.P. Carroll owed her a duty regarding the safety of the step and landing because they shared possession and control of the step and landing. We agree.

In a premises-liability action, a plaintiff must prove the elements of negligence which are: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) causation, and (4) damages. *Quinto v Woodward Detroit CVS, LLC*, 305 Mich App 73, 75; 850 NW2d 642 (2014) (citation omitted). Whether a defendant owed a plaintiff a duty is a question of law for the court to decide. *Anderson v Wiegand*, 223 Mich App 549, 554; 567 NW2d 452 (1997). A person on the land of another is owed different duties depending on which of three possible categories the person falls under: (1) an invitee, (2) a licensee, or (3) a trespasser. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). In *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012), the Supreme Court explained that there are two underlying principles to Michigan's premises-liability law:

> First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, and as a corollary, landowners are not insurers; that is, they are not charged with

guaranteeing the safety of every person who comes onto their land. [*Id*. at 459 (footnotes omitted).]

This case only concerns whether plaintiff was an invitee or a licensee.

"An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Stitt*, 462 Mich at 596-597 (quotation marks, brackets, and citation omitted). "A person invited on the land for the owner's commercial purposes or pecuniary gain is an invitee, and a tenant is an invitee of the landlord." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). A "landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt*, 462 Mich at 597. Landlords "have a duty to keep reasonably safe from physical hazard areas over which they exert control." *Bailey v Schaaf*, 494 Mich 595, 605; 835 NW2d 413 (2013). A "landlord must exercise due care to keep the halls, stairs, passageways, and like appurtenances reasonably safe for the tenants and their families and servants and for those who come to visit or transact business with them." *Id*. at 604-605 (quotation marks and citation omitted).

"A 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Stitt*, 462 Mich at 596. In general, a guest at a condominium complex is a licensee because the person is on the condominium complex's property, with permission, for a limited purpose. *DeBoard v Fairwood Villas Condo Ass'n*, 193 Mich App 240, 241; 483 NW2d 422 (1992). "A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596.

"[P]remises liability is conditioned upon the presence of both possession and control over the land because the person having such possession and control is normally best able to prevent harm to others." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 705; 644 NW2d 779 (2002) (quotation marks, ellipses, and citations omitted). Who had possession and control of a piece of property at a given time presents a question for the jury to decide unless there is no dispute of material fact. *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 569; 563 NW2d 241 (1997). For purposes of premises liability, "possession" is defined as "the right under which one may exercise control over something to the *exclusion of all others*." *Derbabian*, 249 Mich App at 703, quoting *Black's Law Dictionary* (7th ed) (brackets omitted). "Control" means the ability to exercise "direction over; dominate, regulate, or command." *Id*. (citation omitted). Title ownership is not dispositive of the question who has possession and control of the property. *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980). The right to possess a property "can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id*. at 553. The Supreme Court has explained that "possession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property." *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998). Two people or entities

can have coextensive duties to entrants on land when they share possession and control of the property. *Bailey*, 494 Mich at 607.

The association and J.P. Carroll do not present on appeal either a legal or factual argument regarding whether they had possession or control of the landing. By failing to offer an argument as an appellee, the association and J.P. Carroll have abandoned the issue on appeal. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 520; 892 NW2d 467 (2016). Nevertheless, "[o]n appeal, in order for the appellant to receive relief, it has the burden to demonstrate that the lower court erred as governed by the relevant standard of review." *Menard, Inc v City of Escanaba*, 315 Mich App 512, 521 n 3; 891 NW2d 1 (2016). Although the trial court did not decide the issue who had possession and control of the landing, an appellant will not be punished for the trial court's failure to decide an issue that was presented to the court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (citation omitted). Plaintiff has provided adequate legal authority and evidence to carry the burden of showing Sayre, the association, and J.P. Carroll shared possession and control of the step and landing and owed plaintiff a duty in premises liability.

Regarding possession of the landing, the situation presented in this case cannot be resolved using the normal test of determining who had the authority to exclude all others from the land. See *Derbabian*, 249 Mich App at 703. Under the ownership structure of the Woods Condominiums, the landing was collectively owned and no one party could exclude all others from the landing. The complex's co-owners each owned the interior of their own units in fee, and all other aspects of the property were common elements that were co-owned by all unit-owners. There were limited common elements and general common elements. Limited common elements were common elements that were exclusively accessible to only the unit-owners with an appurtenant right to use the element. The step and landing at issue in this case were limited common elements that Sayre had an appurtenant right to as owner of her unit. All other common elements were considered general common elements. The association retained an easement to enter limited common elements to perform maintenance and make safety improvements. Sayre and the other co-owners of the building had mostly unfettered access to the landing, but the ownership structure indicates that each co-owner could only exclude trespassers, i.e., persons who were not an invitee or licensee of one of the four co-owners or a licensee of the association who was there for a proper purpose. Under these circumstances, Sayre had some degree of possession of the landing because she had an ownership interest in the landing and had limited physical possession of the landing.

There is also evidence that the association and J.P. Carroll had a degree of possession of the landing. The association is a nonprofit corporation tasked with the management and maintenance of the property and its membership is comprised of the co-owners. J.P. Carroll was delegated authority to manage and maintain the common areas. Under the master deed, the association was responsible for "the maintenance, decoration, repair, and replacement" of both general and limited common areas, "except where specific exceptions are stated in the Condominium Documents." There does appear to be some form of an exception for modifications to limited common elements because the complex's rules and regulations state that all maintenance, repair, or replacement of modifications to common elements would be performed at the owners' expense. However, according to the association's bylaws, the association was responsible for insuring against claims of bodily injury arising from the ownership or maintenance of "Common Elements," and the master deed provides that any reference to "Common Elements"

means both general and limited common elements unless otherwise specified. The insurance-coverage provision in the bylaws states that it applies to "Common Elements," without distinction, and it included coverage for "host liability." The facts that the association, with J.P. Carroll performing its responsibilities, had access to the property, was responsible for the maintenance of the property, and took on liability associated with a failure to maintain the property lead to an inference of possession. Under these circumstances, Sayre, the association, and J.P. Carroll all had some amount of limited possession of the landing.

Sayre, as a co-owner of the building, had some degree of control over the step and landing that was limited by the complex's policies. According to the association's rules and regulations, co-owners generally could not make an alteration or modification to a common element, including outdoor areas, without receiving approval from the association's board of directors. The rules and regulations seem to exclude alterations or modifications to limited common elements from the approval requirement. However, a document that appears to provide explanations of the complex's rules and regulations states that alterations to the exterior of a unit, such as a stairway railing, require approval by the association and that maintenance and repair of the alteration is the responsibility of the co-owner. It does not appear that any of the condominium documents address the installation of carpet on a landing. However, Robert Green, the association's president, testified that co-owners would need approval from the board of directors to install carpeting because it was a modification to a common element. According to Marlena Gromadzki, who was employed by J.P. Carroll to manage the property, all four co-owners of a building would have to agree to install or remove carpeting, and all four co-owners would be responsible for the cost of installation, maintenance, and repair. Gromadzki was not aware of that being a written policy. Gromadzki also could not explain what would happen if the four co-owners of a building could not agree on an alteration or modification. The rules and regulations state that a subsequent owner of a unit assumes the responsibility of maintaining, repairing, or replacing an alteration made by a previous owner. Under those circumstances, Sayre had some amount of control over the condition of the carpet and the rubber strip on the step and landing.

There is evidence that the association and J.P. Carroll exercised a greater degree of control over the landings in the complex than did co-owners who had the right to use a particular landing. Gromadzki testified that she would conduct "spring walk-around" inspections of the condominiums to document items that needed to be repaired. In some cases, the association was responsible for a repair and, in other cases, Gromadzki would direct owners to make the repairs. At her May 26, 2022 deposition, Gromadzki testified that she had recently sent letters to several homeowners instructing them to replace the carpet on their landings. Those letters indicated that J.P. Carroll was directing the owners to replace the carpets because they were tripping hazards. The record indicates that the same master deed, bylaws, and rules and regulations were in place in 2022 as were in place when plaintiff fell on June 4, 2020. Sayre testified that, after the rubber strip was installed, the association never told her to take any further action with the landing. Further, the association exercised physical control over the landing, including the carpet. After plaintiff's fall, the association installed a second railing in front of the unit, which was affixed to the landing, and the association did not ask for the co-owners' permission to install the railing. Photographs in the record showing the second railing indicate that the railing could not have been installed without some type of modification to or manipulation of the carpet. Kolicki testified that the association also cleaned the carpet on the landing.

Although the evidence regarding possession and control is not overwhelming in one direction or the other, the material facts regarding possession and control of the landing for the purposes of premises liability are not in dispute. Sayre did not have complete ownership rights over the landing or the complete right to exclude others from the landing, but no person or entity held a right to possess the landing that was superior to Sayre's right. The association and J.P. Carroll's right to possess the landing did not extend beyond entering the landing for purposes of maintenance, repair, or modification. However, the association and J.P. Carroll had far greater control over the condition of the landing than Sayre. Sayre assumed joint-responsibility over the carpet on the landing when she purchased her unit, but Sayre had no right to unilaterally make modifications to the landing. Any modifications could only be made with the consent of the other co-owners of her building and the association. In contrast, the association and J.P. Carroll had the authority to unilaterally make modifications to the landing or to order the co-owners to repair, replace, or remove modifications. On the basis of those facts, Sayre, the association, and J.P. Carroll shared possession and control of the landing for the purposes of establishing duty in premises liability. Possession and control will normally lie with who is in the best position to prevent harm to others. *Derbabian*, 249 Mich App at 705. Sayre had joint possession of and joint responsibility over the carpet, but lacked the authority to make changes on her own. Although the association was not responsible for the cost of installing or maintaining the carpet, the association was responsible for ensuring the safety of the landings and insuring against claims of bodily injury. Under those circumstances, Sayre, the association, and J.P. Carroll all had a duty to plaintiff in premises liability.

Sayre owed plaintiff the duty of an invitee. Sayre leased space in her unit to plaintiff, which carries with it the duties of an invitor. See *Benton*, 270 Mich App at 440. As a landlord, Sayre had the "duty to keep reasonably safe from physical hazard areas" she exerted control over, including "halls, stairs, passageways, and like appurtenances[.]" *Bailey*, 494 Mich at 605. As discussed, Sayre did not have exclusive possession and control over the step, and Sayre lacked the ability to unilaterally make changes to the step and landing. However, a landlord's duty to ensure the safety of a common area is not absolute. *Holland v Liedel*, 197 Mich App 60, 62; 494 NW2d 772 (1992). A landlord is only required to take reasonable steps to prevent injury. See *Bailey*, 494 Mich at 605. It follows that, as a landlord with joint possession and control over the step and landing, Sayre had the duty to act reasonably under the circumstances to keep the step and landing safe from hazards. In practice, this would mean that Sayre had the duty to inspect the step and landing for safety, warn plaintiff of any hazards, and take reasonable steps to work with the other co-owners in the building, the association, and J.P. Carroll regarding any necessary repairs.

The association and J.P. Carroll owed to plaintiff the standard of care afforded to a licensee. As discussed, a guest of a condominium owner is a licensee of the condominium complex while in common areas. *DeBoard*, 193 Mich App at 241-242. Although not a guest or an owner, plaintiff was in the common areas of the complex with permission. The association's rules and regulations allow for owners to lease out their units to others. Sayre received approval from the association to rent out a portion of her unit, with written confirmation of the approval from the then-property management company. Therefore, the association owed plaintiff a duty at least as a licensee on the basis of having given plaintiff permission to enter land it had possession and control over. However, it does not follow that permitting Sayre to lease a portion of her property to plaintiff translated the association's duty into that of an invitor. The association was not holding out the common areas of the complex to plaintiff for business-related purposes. The association did not

stand to reap any gain, whether pecuniary or otherwise, from offering its permission. The association was simply fulfilling the executive function of considering and approving a request of a co-owner in accordance with the association's rules and regulations. Further, condominium complexes do not owe a duty in premises liability to a unit-owner who is a co-owner of the complex. *Francescutti v Fox Chase Condo Ass'n*, 312 Mich App 640, 642-643; 886 NW2d 891 (2015). A co-owner cannot be an invitee or a licensee of the condominium association because, as an owner of an interest in the property, the co-owner is not on the land of another. *Id*. at 643. There is no authority suggesting that Sayre, as a co-owner, could create an invitee relationship between an association and a renter, who only possesses part of the co-owner's estate, when the co-owner is not owed that duty in the first place. "Leasing one portion of a building grants the tenant possession of that portion of the building and no more." *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 57; 981 NW2d 88 (2021). Accordingly, plaintiff was a licensee and the association only owed plaintiff the duty to warn plaintiff of any hidden dangers unknown to plaintiff. *Stitt*, 462 Mich at 596.

## V. BREACH

Plaintiff argues that the trial court erred when it determined that her premises-liability claims were barred because the step presented an open and obvious condition. We conclude that the association and J.P. Carroll did not breach the duty of care they owed to plaintiff. However, summary disposition of plaintiff's premises-liability claim against Sayre was improperly granted because there exists a question of material fact regarding whether Sayre breached her duty of care.

First, the association and J.P. Carroll did not breach their duties to plaintiff. As licensors, neither of them had a duty to act regarding a danger that was known to plaintiff. See *Stitt*, 462 Mich at 596. Plaintiff testified that she knew the rubber strip was in poor condition, the carpet was frayed underneath it, and the rubber strip would curl upwards on hot days. It was a hot, sunny afternoon when plaintiff fell. Plaintiff never complained about the condition of the step. On the basis of plaintiff's testimony, plaintiff knew that the rubber strip on the step posed a tripping hazard before her fall. Therefore, the association and J.P. Carroll did not have a duty to warn of or guard against the known danger.

There is a question of material fact regarding whether Sayre breached the duty Sayre owed to plaintiff to inspect the premises and make necessary repairs to the step and landing. See *Stitt*, 462 Mich at 597. Under the framework the Supreme Court announced in *Kandil-Elsayed*, ___ Mich at ___; slip op at 44, plaintiff's knowledge of the hazardous condition is now only relevant to plaintiff's comparative fault in causing the fall. The Court held that a plaintiff's knowledge of a condition and decision to, nevertheless, confront the condition is not dispositive on the question whether the defendant breached the duty owed to the plaintiff. In *Kandil-Elsayed*, the plaintiff knowingly confronted snowy and icy conditions, and the Court concluded that there existed a question of material fact regarding whether the defendant responded reasonably to the accumulation of snow and ice on its property. *Id*. at ___; slip op at 45-46.

There exist questions of material fact regarding whether Sayre should have discovered the hazardous condition and what would have been a reasonable response to the condition. Although Sayre and Kolicki had not noticed any issues with the rubber strip, plaintiff moved into Sayre's unit in October 2019, and plaintiff was aware that the rubber strip curled up on hot days before her

June 4, 2020 fall. Given the apparent ease with which plaintiff discovered the condition, it is reasonable to infer that Sayre would have discovered the condition of the rubber strip if she had been taking steps to assess the safety of the step and landing. As discussed, Sayre's ability to make alterations to the carpet on the step and landing was limited because of the complicated ownership and decision-making situation regarding the landing. A reasonable response to a dangerous condition of the rubber strip would have been to at least discuss repairs with the other co-owners of the building. If the co-owners disagreed regarding whether to take action, Sayre could have taken the issue to the association or J.P. Carroll. If there was no agreement with Sayre that action needed to be taken, that would have been evidence that it was reasonable for the rubber strip to be left in the condition it was in.

Characteristics of the step and landing also show that it would have been reasonable for Sayre to try to repair the step. Although a fall from a single step would not have likely posed a risk of severe bodily injury or death, there is evidence that the condition of the rubber strip upon the step created a more unreasonable risk of harm than would normally be expected. Plaintiff offered as evidence the opinion of an expert, Steven J. Ziemba, who concluded that plaintiff's fall was caused by both the rubber strip and the structure of the step. Ziemba opined that the dangerous condition of the rubber strip was exacerbated by the step's height. The top of the step was 10 inches above the sidewalk, which was in excess of the seven-inch riser height limit prescribed by the Michigan Building Code and the International Property Maintenance Code. Gromadzki testified that the improperly tall step was likely in compliance with building codes because the nonconformance would have fallen under the code's grandfather clause, but that J.P. Carroll would be responsible for repairing a grandfathered condition that was, nevertheless, dangerous. Additionally, plaintiff could not approach the front door of the unit without confronting the step. It does not appear from the record that there was any other entrance for plaintiff to enter the unit. Plaintiff worked full-time, and she was on her way home from work when she fell. During her fall, plaintiff was using the only handrailing that was installed to the landing at the time. Under these circumstances, the facts that the step was unusually tall and had to be confronted to enter the unit constitutes additional evidence that would allow a reasonable jury to conclude Sayre failed to anticipate reasonably foreseeable harm. Accordingly, there exists a question of material fact regarding whether Sayre breached the duty of care she owed to plaintiff. The trial court erred when it granted summary disposition in favor of Sayre on plaintiff's premises-liability claim.[6]

VI. MCL 554.139

Plaintiff argues that the trial court erred when it granted summary disposition in favor of Sayre, the association, and J.P. Carroll on plaintiff's statutory claim. We agree that the trial court

---

[6] Plaintiff also argues that there exists a question of material fact regarding whether plaintiff tripped on the step or on the doormat in front of Sayre's door. However, plaintiff was unequivocal in her deposition testimony that she fell on the step. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Living Alternatives for Developmentally Disabled Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994). Therefore, plaintiff may not argue that there is a question of material fact regarding whether she fell on the doormat.

erred when it granted summary disposition in favor of Sayre, but disagree that the trial court erred when it granted summary disposition in favor of the association and J.P. Carroll.

"In addition to the general common-law duties that a possessor of land owes to invitees, MCL 554.139 imposes further covenants and duties on landlords who lease or license their property to residential tenants." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 636; 971 NW2d 716 (2021). MCL 554.139 states, in relevant part:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.

"The statutory protection under MCL 554.139(1) arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease." *Allison*, 481 Mich at 425. "MCL 554.139(1)(a) does not require lessors to maintain a common area in an ideal condition or even in the most accessible condition possible. Rather, the statute requires the lessor to maintain a common area in a condition that renders it fit for its intended use." *Jeffrey-Moise*, 336 Mich App at 637 (citation omitted). For purposes of the statute, "common areas" are "those areas of the property over which the lessor retains control that are shared by two or more, or all, of the tenants." *Allison*, 481 Mich at 427.

When the trial court granted summary disposition in favor of Sayre, the association, and J.P. Carroll on all of plaintiff's claims, the trial court did not directly address plaintiff's statutory claims. The trial court's order only stated that plaintiff could only bring a premises-liability claim because her injuries arose from a condition on the land. The trial court reasoned that summary disposition of plaintiff's claims was properly granted in favor of Sayre, the association, and J.P. Carroll because plaintiff was aware of the condition and the condition was, therefore, open and obvious, barring any recovery. The trial court erred in its rationale. A plaintiff can sustain claims of both premises liability and violations of MCL 554.139 arising from the same condition on the land. *Jeffrey-Moise*, 336 Mich App at 635. Further, plaintiff's statutory claim could not be barred by the open and obvious doctrine. This Court has held that "[t]he open and obvious danger doctrine is not available to deny liability for a statutory violation under MCL 554.139(1)." *Bowman v Walker*, 340 Mich App 420, 431; 986 NW2d 419 (2022) (quotation marks and citation omitted).

The trial court erred as a matter of law when it granted summary disposition in favor of Sayre on this issue without considering plaintiff's claim on the merits. Plaintiff did not make an argument on appeal regarding the merits of her statutory claim against Sayre. Plaintiff has only asked this Court to remand this case to the trial court for consideration of her statutory claim. This Court has the authority to decide an issue the trial court did not decide. *Glasker-Davis*, 333 Mich App at 227. We decline to decide the issue in regards to Sayre and instead remand to the trial court because plaintiff has shown she may be entitled to relief, but has not made a factual argument on appeal.

However, we choose to decide the issue in regards to the association and J.P. Carroll because those parties have shown entitlement to judgment in their favor without consideration of

-15-

the factual merits of plaintiff's claim. Plaintiff cannot succeed on her statutory claims against the association and J.P. Carroll. Although plaintiff was a licensee of the association and J.P. Carroll for purposes of premises liability, plaintiff was not a licensee of the association and J.P. Carroll for purposes of MCL 554.139. MCL 554.139 only applies when a license to use residential property arises from a contractual agreement. "The covenants created by the statute establish duties of a lessor or licensor of residential property to the lessee or licensee of the residential property, most typically of a landlord to a tenant. By the terms of the statute, the duties exist between the contracting parties." *Mullen v Zerfas*, 480 Mich 989, 990; 742 NW2d 114 (2007).[7] The Supreme Court has explained that "a non-tenant could never recover under the covenant for fitness because a lessor has no contractual relationship with—and, therefore, no duty under the statute to—a non-tenant." *Allison*, 481 Mich at 431. The association and J.P. Carroll did not lease the step and landing to any tenant. They managed the property owned by the co-owners of the complex. The association and J.P. Carroll's role regarding plaintiff's lease with Sayre was limited to approving Sayre's request to take on a tenant and approving the terms of the lease. There was no contractual relationship between plaintiff, the association, and J.P. Carroll. Therefore, the association and J.P. Carroll did not owe plaintiff a duty under MCL 554.139. Although the trial court erred in its analysis, the court reached the correct result when it decided the association and J.P. Carroll's motion for summary disposition. This Court will not reverse a decision of the trial court when the trial court reached the correct outcome for the wrong reason. *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993). Accordingly, plaintiff is not entitled to relief on this issue.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen

---

[7] The quoted statement is from a Supreme Court order denying an application for leave to appeal and remanding the case to the circuit court. *Mullen*, 480 Mich at 989-990. A Supreme Court order "is binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012). The Supreme Court's statement of the law in *Mullen*, 480 Mich at 989-990, is binding precedent because the order was a final disposition of the application for leave to appeal and included a statement of the relevant facts and reason for the Court's decision.